STATE OF CONNECTICUT *v.* DARRON L. GASKIN
(AC 29422)

Gruendel, Lavine and Lavery, Js.

Argued May 21—officially released September 1, 2009

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Amy Sedensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Darron L. Gaskin, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that the trial court improperly (1) limited his cross-examination of the victim,[1] (2) failed to disclose all relevant material following an in camera review, (3) admitted the victim's statement into evidence in violation of the *Whelan*[2] rule and (4) granted the state's motion to limit the defendant's closing argument. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 19, 2005, the defendant was thirty years old and the victim was fifteen years old. Although the victim lived with her father, she frequently spent the night at her mother's home. The victim knew the defendant as a close family friend who socialized with her stepfather and was a frequent weekend visitor at her mother's home. Prior to the incident that gave rise to the subject charges, the defendant and the victim's family were on good terms.

---

[1] In accordance with our policy of protecting the privacy interest of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] See *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

On March 19, 2005, the victim had fallen asleep on the living room couch in her mother's home. Her mother awoke her and instructed her to go upstairs to bed so that the defendant could sleep on the couch. The victim went upstairs but later went to the basement to smoke a cigarette. The defendant came to the basement, sat beside the victim on a couch and also smoked a cigarette. The victim and the defendant played a card game, and the defendant offered the victim a glass of beer, which she refused. The defendant also asked the victim if she wanted to take the drug ecstasy, which the defendant did not have in his possession, but attempted unsuccessfully to get via the telephone.

The defendant noticed a "hickey" on the victim's neck and asked how she got it. The victim responded that her boyfriend had given it to her. The defendant touched the "hickey" and looked at the victim in a manner that she considered weird. The defendant kissed the "hickey," released the victim's bra, touched her breasts and placed his mouth on them. The defendant talked to the victim about her being his wife, marriage, children and getting a place together. The victim was shocked by the defendant's behavior. The defendant also removed the victim's pants and asked the victim for a condom, which she did not have and refused to get from upstairs. The victim asked the defendant what he was doing. The defendant assured her that it was all right, as she was his wife. Things, however, did not seem right to the victim. The defendant removed a tampon from the victim and performed cunnilingus. Although the victim resisted the defendant's advances, she did not fight or try her hardest to stop him. She did not call for her mother, who was upstairs sleeping. The defendant's sexual assault lasted approximately one-half hour. The victim then put on her clothing, went upstairs to her older sister's bedroom and fell asleep.

In the morning, the victim confided to her older sister what the defendant had done. The victim also telephoned her boyfriend and confided in him because she thought that she had cheated on him. The boyfriend told the victim's mother of the defendant's sexual assault. The victim's mother, in turn, told the victim's father and reported the victim's allegations to the police.

The following day, the victim went to a hospital, where she was examined by an emergency room physician, Otilia Capellan. During the examination, the victim reported the details of the defendant's sexual assault and permitted swabs from a rape kit to be used to obtain vaginal samples. The examination disclosed no evidence of sexual assault. At the time of the examination, the victim was not wearing the clothes she had worn at the time of the sexual assault. Four days after the defendant sexually assaulted the victim, the victim spoke with two members of the Waterbury police department and provided them with a two page written statement detailing the defendant's sexual assault.

The defendant was arrested and charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[3] sexual assault in the second degree in violation of § 53a-71 (a) (1), risk of injury to a child in violation of § 53-21 (a) (1) and risk of injury to a child in violation of § 53-21 (a) (2). At trial, the victim testified that she never thought that the case would go to court and that she did not want the defendant to be prosecuted. She also testified that she had not wanted to talk to her mother, the police or a physician about the incident. The victim was offered an opportunity to talk to a rape counselor at the hospital, but she declined. After the jury found the defendant

---

[3] The jury found the defendant not guilty of the charge of sexual assault in the first degree.

guilty of sexual assault in the second degree and the charges of risk of injury to a child, he was given an effective sentence of ten years in prison, execution suspended after four years, and ten years of probation. This appeal followed.

I

The defendant first claims that the court improperly denied him the constitutional right to present a defense by barring him from cross-examining the victim about an alleged conversation in which she was overheard laughing with a group of friends about allegations of sexual assault made against an older man. Although the defendant frames his claim as a constitutional one, we conclude that it is evidentiary in nature and that the court did not abuse its discretion by precluding the subject cross-examination.

A trial court has wide discretion to determine the relevance of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. See *State* v. *Na'im B.*, 113 Conn. App. 790, 801, 967 A.2d 1234, cert. denied, 292 Conn. 905, 973 A.2d 106 (2009). "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) Id.

The following facts are relevant to the defendant's claim. The victim was the first witness to testify. During cross-examination, defense counsel asked her: "Do you recall one time before March 19, 2005, talking with a group of your friends about making false accusations?" The prosecutor objected, stating, in part, that the question violated the rape shield statute.[4] Thereafter, the

---

[4] General Statutes § 54-86f, commonly referred to as the rape shield statute, provides in relevant part: "In any prosecution for sexual assault . . . no evidence of the sexual conduct of the victim may be admissible unless such

court excused the jury and the victim and heard argument from both counsel. Defense counsel sought to cross-examine the victim about an incident in which William Gaskin, the defendant's brother, overheard a conversation between the victim and her friends during which the girls laughed about making an accusation of sexual assault against an older man. Defense counsel stated that he was not claiming that the victim had made a false accusation against the defendant but that the proffered evidence was relevant to show the victim's flippant attitude toward accusations of sexual assault. The defense theory was that the victim had told a "story" and that she could not "take it back."

Following a short recess, the prosecutor argued that a victim's past allegations of sexual assault are inadmissible pursuant to the rape shield statute. But see footnote 4. The prosecutor also argued that the defendant bears the burden of proof as to the relevance of such testimony and that the court may give the defendant an opportunity to make an offer of proof during a hearing and to exclude the evidence if it is more prejudicial than probative. The court sustained the state's objection but nonetheless offered the defendant an opportunity to present evidence outside the presence of the jury.

On the following day, the defendant called William Gaskin to testify as part of an offer of proof. Gaskin testified that he knew the victim and her stepfather and that he and the stepfather had overheard the victim and three of her friends "joking and laughing about how they got somebody jammed up, an older man, and they were saying that's good for an older guy messing with

evidence is . . . (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. . . ." In its brief on appeal, the state has conceded that the rape shield statute is inapplicable in this case, as the line of inquiry the defendant sought did not implicate the victim's prior sexual conduct or a prior false complaint of rape made by the victim.

a younger girl. And they made accusations of a sexual assault." Gaskin did not know the date of the conversation. He also did not know what the victim said exactly. All he remembered was that the victim was laughing. Defense counsel again stated that William Gaskin's hearsay testimony was not being offered as to the truth of the victim's allegations but to demonstrate the victim's attitude toward allegations of sexual assault against an older man.

The prosecutor again objected, arguing that the court has discretion to determine whether the probative value of the proffered evidence was outweighed by its prejudicial impact, noting that the proffered testimony was hearsay and that William Gaskin did not know when the alleged conversation had taken place, who the participants were and who said what. The court again sustained the state's objection, stating that the proffered basis for the cross-examination was more prejudicial than probative.[5] The court also noted that it was not clear what William Gaskin was testifying about.

On appeal, the defendant claims that the cross-examination of the victim was the only evidence he had to counter the state's question about why the victim would fabricate an allegation against the defendant, a family friend. At trial, the defendant sought to demonstrate

---

[5] In ruling, the court stated: "The prior ruling excluding that question in that area stands. The court specifically finds that based on the information that [William] Gaskin had to provide, that he was unable to provide anything that [the victim] specifically said, it is not an area to be gone into. Any probative value that it . . . might have . . . if any, is outweighed by the prejudicial value.

\* \* \*

"Well, I don't know if there's more that [William] Gaskin has to say other than this. But I find that this portion of his testimony is not probative of any of the issues in this case and would be highly prejudicial and can possibly, depending on how it is interpreted, fall under the rape shield statute in terms of being an alleged false accusation. It really was not clear to me what he was testifying about."

that the victim had fabricated the assault allegations because she took such allegations lightly; they were something to be laughed about. The defendant contends that conduct, such as laughter, is not hearsay and is "admissible to prove circumstantially a complainant's state of mind." *State* v. *Dehaney*, 261 Conn. 336, 361 n.15, 803 A.2d 267 (2002), cert. denied, 537 U.S. 1217, 123 S. Ct. 1318, 154 L. Ed. 2d 1070 (2003). Moreover, the defendant contends that it was improper for the court to restrict his cross-examination of William Gaskin because the defendant's articulated "theory of defense may make the [complainant's] state of mind material to the determination of the defendant's guilt or innocence." (Internal quotation marks omitted.) Id., 357. A function of cross-examination is to demonstrate a witness' motivation to lie; see *State* v. *Aponte*, 249 Conn. 735, 749, 738 A.2d 117 (1999); restricting cross-examination may implicate a defendant's right to present a defense; see *State* v. *Thomas*, 110 Conn. App. 708, 721–22, 955 A.2d 1222, cert. denied, 289 Conn. 952, 961 A.2d 418 (2008); and the right to present a defense is based in the constitutional right to due process. *State* v. *Corchado*, 188 Conn. 653, 660, 453 A.2d 427 (1982).

In response to the defendant's appellate claims, the state contends that the defendant failed to lay a proper foundation for the proposed cross-examination. Although the defendant argues that the state did not object to the cross-examination on the basis of foundation, at trial, the prosecutor noted that William Gaskin did not know when he overheard the alleged conversation, could not identify who said what and whether the accusations he heard were false. We conclude that the prosecutor's objection was the functional equivalent of an objection based on lack of an adequate foundation.

We agree with the state that the defendant failed to provide an adequate foundation on which to base the proffered line of cross-examination. Although the court

precluded the cross-examination on the basis of its being more prejudicial than probative, the court also implied that it lacked a proper foundation. See footnote 5. "The proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant." (Internal quotation marks omitted.) *State* v. *Vines*, 71 Conn. App. 359, 366, 801 A.2d 918, cert. denied, 261 Conn. 939, 808 A.2d 1134 (2002).

"Generally, under the constitutional right to confrontation, a defendant is allowed broad latitude to test the veracity and credibility of the witnesses testifying against him. . . . The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . Only relevant evidence may be elicited through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable." (Internal quotation marks omitted.) *State* v. *Bardliving*, 109 Conn. App. 238, 247–48, 951 A.2d 615, cert. denied, 289 Conn. 924, 958 A.2d 153 (2008).

Our code of evidence provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Conn. Code Evid. § 4-1. The code also provides that "[r]elevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise,

confusion of the issues, or misleading the jury . . . ." Id., § 4-3. Situations in which the potential prejudicial effect of relevant evidence suggests its exclusion include "where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues . . . ." (Internal quotation marks omitted.) *State* v. *Nash*, 278 Conn. 620, 653, 899 A.2d 1 (2006).

Even if we were to conclude that the court abused its discretion by restricting the defendant's cross-examination of the victim, which we do not, our review of the transcript; see *State* v. *Valentine*, 240 Conn. 395, 407, 692 A.2d 727 (1997) (appellate court should review entire cross-examination); demonstrates that defense counsel had the opportunity to conduct a vigorous cross-examination of the victim, particularly in attacking her recollection of the incident by bringing to the jury's attention her memory lapses and the discrepancies between the statement she gave to the police and her testimony on direct examination. In addition, during final argument, defense counsel presented his theory of defense to the jury that the victim did not regard seriously allegations of sexual assault, did not understand the consequences of such an allegation and did not know how to get out of having told a lie. The defendant, therefore, has failed to demonstrate that the court's evidentiary ruling was harmful. See *State* v. *Stavrakis*, 88 Conn. App. 371, 374, 869 A.2d 686, cert. denied, 273 Conn. 939, 875 A.2d 45 (2005). We conclude that the exclusion of the subject line of cross-examination, which lacked an adequate foundation and was therefore not relevant, did not have a substantial effect on the jury's verdict.

II

The defendant's second claim is that the court improperly failed to disclose to him potentially exculpatory material following its in camera review of certain

confidential records pertaining to the victim. The defendant requested that this court conduct an in camera review to determine whether the trial court abused its discretion. See *State* v. *Na'im B.*, supra, 113 Conn. App. 793. "[T]he linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality and disclosing them to the defendant in order to protect his right of confrontation." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 381, 857 A.2d 808 (2004) (appellate court should not disturb trial court ruling absent abuse of discretion), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). On the basis of our in camera review of the sealed records at issue, we conclude that the court did not abuse its discretion in failing to make the records available to the defendant. See id. (appellate court should not disturb trial court ruling absent abuse of discretion).

III

The defendant's third claim is that the court improperly admitted into evidence a redacted version of the victim's statement to the police pursuant to *Whelan*, as the statement was unreliable under the totality of the circumstances, and the court failed to conduct a hearing to determine the reliability of the statement pursuant to *State* v. *Mukhtaar*, 253 Conn. 280, 307 n.27, 750 A.2d 1059 (2000). The state argues that the defendant waived those claims at trial. We agree that the claims were waived.

The following facts are relevant to the defendant's claim. At a recess during the defendant's cross-examination of the victim, the prosecutor informed the court that she intended to put into evidence a redacted copy of the statement pursuant to *State* v. *Whelan*, 200 Conn.

743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The state sought to put into evidence those portions of the statement that the victim omitted during her testimony and those about which she claimed to have no memory. The state relied on *State* v. *Luis F.*, 85 Conn. App. 264, 270, 856 A.2d 522 (2004) (inconsistent statement). Defense counsel objected, stating that the statement was unreliable and citing § 8-5 (1) of our code of evidence.[6] The statement is unreliable, according to the defendant, because the fifteen year old victim gave it to police several days after the incident. Moreover, the victim had testified that she did not want to testify, did not tell her mother about the incident, never wanted the matter to go this far and was compelled by her father to give the statement to the police. Defense counsel also stated that a hearing was necessary to determine the reliability of the statement. The court stated that before it ruled on the matter, it wanted to see what portions of the statement the state sought to put into evidence. The prosecutor agreed to prepare a redacted version of the statement showing those portions to be put into evidence.

On appeal, the defendant claims that although the statement meets the *Whelan*[7] criteria, it was improper for the court to admit the statement without having conducted a hearing under *State* v. *Mukhtaar*, supra,

---

[6] Section 8-5 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule, provided the declarant is available for cross-examination at trial: (1) . . . A prior inconsistent statement of a witness, provided (A) the statement is in writing or otherwise recorded by audiotape, videotape or some other equally reliable medium, (B) the writing or recording is duly authenticated as that of the witness, and (C) the witness has personal knowledge of the contents of the statement. . . ."

[7] Under *Whelan*, an out-of-court statement is admissible as substantive evidence if the statement is (1) a prior inconsistent statement, (2) is signed by the declarant and (3) the declarant testifies at trial and is subject to cross-examination. *State* v. *Whelan*, supra, 200 Conn. 753.

253 Conn. 307 n.27, to determine the reliability of the statement.[8] The state argues that by acceding at trial to the manner in which the statement was redacted and admitted into evidence, the defendant has waived his claim. We agree with the state.

Our review of the transcript reveals that the prosecutor agreed to provide a redacted copy of the statement for the court and defense counsel. Defense counsel voiced no objection to the proposed plan. After the state's redacted version of the statement was available, defense counsel went through the statement line by line on the record. Thereafter, to assure that only the agreed on portions of the redacted statement would go before the jury, the court went off the record and came off the bench to review the statement with both counsel in the courtroom. Immediately after the court returned to the bench, defense counsel stated, "I would like an opportunity to . . . continue my cross-examination based upon the inconsistent statement that's being put [into evidence]."

Moreover, with respect to the statement, following an in-chambers charging conference, the court summarized the conference. "For the record, counsel and I

---

[8] The defendant also claims that the admission of the victim's statement to the police under *Whelan* implicates his right to cross-examine the victim who has no memory of portions of her statement. If the victim was unable to recollect, the defendant claims that he was not able to cross-examine her, in violation of the confrontation clause. See *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The defendant concedes, however, that his confrontation claim as to cross-examination and reliability of the statement is controlled by our Supreme Court's decision in *State* v. *Simpson*, 286 Conn. 634, 652, 945 A.2d 449 (2008) (when declarant appears for cross-examination, no constraints on use of prior testimonial statements; irrelevant that reliability of statement cannot be replicated if declarant testifies to same matter in court). He also claims that a witness' inability to remember a prior statement is not the equivalent of an inconsistent statement. The defendant acknowledges that this claim, too, is controlled by *Simpson*. Although the defendant recognizes that this court is bound by Supreme Court precedent, he raised those two claims in his brief to preserve them for further review.

had a charg[ing] conference in chambers, and, with respect to the discussion, I am going to briefly summarize what occurred, and, if counsel has anything to add or amend, we can do that. We did agree that we would use the portion of the state's charge regarding *Whelan* statements contained on page twenty-three and twenty-four of the state's amended request to charge. We also amended that section indicating in the middle of page twenty-three, at the defense request, we amended it to read, 'therefore, if you believe what the witness previously indicated in the portions of the statement,' which would rule out, as opposed to what the witness testified to here in court. And I have just showed counsel also a few lines down, I've changed it to indicate, you may use such evidence either for the purposes of impeachment of the witness' credibility or substantive evidence of what happened.

"We then also agreed to add the portions submitted by [defense counsel] indicating his entire section on inconsistent statements with the addition of the language, 'there's one exception to this,' as I indicated to you earlier, in the state's *Whelan* section. 'You may consider the portion of [the victim's] statement contained in state's exhibit four as substantive evidence of what occurred or for impeachment purposes.' " When the court asked if it had omitted anything, defense counsel mentioned only a matter not relevant to the issue on appeal. Defense counsel also did not take an exception to the charge after it was given.

"Waiver consists of the intentional abandonment or voluntary relinquishment of a known right . . . . [It] involves the idea of assent, and assent is an act of understanding. . . . [W]aiver does not have to be express, but may consist of acts or conduct from which waiver may be implied . . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) *State*

v. *Ross V.*, 110 Conn. App. 1, 4–5, 953 A.2d 945, cert. denied, 289 Conn. 939, 958 A.2d 1247 (2008). "When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. See, e.g., *State* v. *Holness*, 289 Conn. 535, 544–45, 958 A.2d 754 (2008) (holding that defendant waived [claim under *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), that trial court improperly admitted recording of conversation in violation of confrontation clause of federal constitution] when counsel agreed to limiting instruction regarding hearsay statements introduced by statement on cross-examination); *State* v. *Fabricatore*, [281 Conn. 469, 481, 915 A.2d 872 (2007)] (concluding defendant waived claim when he not only failed to object to jury instruction but also expressed satisfaction with it and argued that it was proper)." *State* v. *Smith*, 289 Conn. 598, 621, 960 A.2d 993 (2008). Given the procedural facts of this case and the law, we decline to review the defendant's claims because they were waived.

IV

The defendant's last claim is that the court abused its discretion in granting the state's motion in limine prohibiting defense counsel from arguing to the jury that the state had failed to call any investigation police officers as witnesses. He claims that the restriction on defense counsel's final argument violated the defendant's right to the effective assistance of counsel. We disagree.

During trial, the defendant filed a notice that he intended to comment during final argument on the state's failure to call as witnesses the investigating police officers, particularly Detective Rebecca Wisnie, who was the primary investigator. The defendant argued that it was his intention to comment on the lack

of an investigation and the absence of certain physical evidence that was never seized, such as the victim's pants. He did not indicate that he would ask the jury to draw an adverse inference from the fact that police witnesses did not investigate. Our review of the transcript demonstrates that the defendant did not explain what testimony either of the two police officers involved would give that was relevant to the defense. In the trial court, the defendant argued lack of an investigation and failure to call the police officers interchangeably.[9]

The state filed a motion in opposition, asking the court to order defense counsel not to comment on the state's failure to call Wisnie or Officer Shawn Roberts. The substance of the state's position was that, under the circumstances of this case, the lack of an investigation beyond the taking of the victim's statement was not relevant, as the case turned on the victim's credibility.[10]

---

[9] In support of the defendant's desire to comment on the lack of an investigation and the failure of the state to call any of the investigating police officers defense counsel argued: "Certainly, part of [the defendant's] defense is the lack of evidence against him. And Your Honor's general charge to the jury at the beginning of the case references the lack of evidence. So, I think that I should be able to comment upon the lack of an investigation and the lack of certain physical evidence that was never seized, a lack of any evidence of an investigation of this girl's story, of the crime scene. There's just a whole side of this case that was never introduced to the jury, and the reason is, and I can say it in good faith, there was no investigation. There just wasn't. And in all my discovery, I've never gotten any police reports from [Detective Wisnie], and there are no photographs and nobody seized any evidence. So, I'm not misleading the jury or anything by arguing that there was a lack of evidence of a police investigation.

"And I think that if Your Honor says that I can't comment on calling the state's failure to call Detective Wisnie, maybe the jury doesn't even know who Detective Wisnie is at this point, but certainly I should be able to comment upon the lack, for instance, of the victim's clothes. Where are the victim's clothes? The clothes that the doctor asked for? Things like that, you know, that might have yielded evidence. Why weren't the clothes introduced. You know there's a lot of evidence that could have backed up this girl's story that just was not presented. And the reason is because it didn't exist."

[10] A redacted version of the victim's statement was placed in evidence. See part III. With respect to its request that the defendant be precluded

The state represented that if the court were to permit the defendant to comment on the absence of police witnesses, the state would move to open the evidence to present such testimony. Both parties cited *State* v. *Malave*, 250 Conn. 722, 738, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000), to support their positions. The court granted the state's motion to preclude the defendant from commenting on the absence of police testimony, citing *Malave*, but allowed defense counsel to comment on evidence of an investigation presented by other witnesses, for example the rape kit.[11]

A court's ruling on the scope of final argument is reviewed pursuant to the abuse of discretion standard. Id., 740. "In *Malave*, our Supreme Court abandoned, in criminal cases, the *Secondino* rule, also known as the

from arguing that the investigating police officers did not testify, the prosecutor stated: "The state's position, Your Honor, that what investigation, if any, the police took is irrelevant as to whether this defendant is guilty or innocent or whether I have proven the case beyond a reasonable doubt or not. This clearly is a case of credibility, whether or not [the jury believes the victim's] testimony. She testified here in court, and whether [the jury believes], if they believe what she stated in court, proves each element beyond a reasonable doubt. To try to put out there a lack of police investigation to argue essentially with the argument is the police vouching for the credibility of [the victim] is what the bottom line is here. If what the police did would be relevant, if they testified, on cross-examination, but they didn't testify."

[11] In ruling on the motion to preclude the defendant from commenting during final argument that the state failed to call the investigating police officers, the court stated: "With respect to commenting on the state's failure to call Detective Wisnie or any other . . . police officers, the state's motion is granted. You are not to comment on that. From my reading of *Malave*, the state's motion will be granted. That does not preclude you from commenting in your final argument on aspects that you wish to stress which are presented in evidence by other witnesses and, specifically, with respect to the fact that the entire process of the rape kit was in terms of when it was taken. The fact that it was testified to that she, I believe the box may have been checked on the form or the doctor testified that the fact she was not in the same clothes. I believe there was other testimony to that effect as well. But in terms of the police or anything that they would or would not have testified to, the state's motion is granted."

missing witness rule, which sanctioned, under certain circumstances, a jury instruction that an adverse inference may be drawn from the failure of a party to produce a witness. Although our Supreme Court abandoned the rule [of *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960)], it did not intend to prohibit counsel from making appropriate comment, in closing arguments, about the absence of a particular witness, insofar as that witness' absence may reflect on the weakness of the opposing party's case. . . . Comments in closing argument that do not directly exhort the jury to draw an adverse inference by virtue of the witness' absence do not necessarily fall under the ambit of *Secondino* . . . and accordingly are not forbidden by *Malave*. Our Supreme Court further provided that [o]f course, the trial court retains wide latitude to permit or preclude such a comment, and may, in its discretion, allow a party to adduce additional evidence relative to the missing witness issue.

"The broad discretion vested in trial courts by *Malave* mirrors the general standards regarding the trial court's ability to limit closing argument. [T]he scope of final argument lies within the sound discretion of the court . . . subject to appropriate constitutional limitations." (Internal quotation marks omitted.) *State* v. *Cruz*, 71 Conn. App. 190, 210, 800 A.2d 1243, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002).

We conclude that the court properly separated the issues of the lack of an investigation and calling certain witnesses and did not, therefore, abuse its discretion by prohibiting defense counsel from commenting on the state's failure to call the investigating police officers. Importantly, the court permitted counsel to comment on the evidence and the scope of the investigation. On appeal, the defendant has failed to identify the relevant evidence to which the officers might have testified other than the mere fact that Wisnie took a statement from

the victim. The victim did not appear at the police station until several days after the incident, and the officers had no personal knowledge of the incident. As the state has noted, the issue to be determined by the jury was one of credibility. In his brief, the defendant contends that he could not cross-examine the police officers to challenge their credibility. If the defendant thought that the police officers' credibility was an issue to be decided by the jury, there was nothing to preclude him from calling them as witnesses. See id., 211.

Moreover, because the record is devoid of any indication as to why the testimony of the police officers was relevant to the defense, the defendant was not denied the constitutional right to the effective assistance of counsel. *Secondino* is an evidentiary issue, not a matter of constitutional dimension. *State* v. *Malave*, supra, 250 Conn. 738.

The judgment is affirmed.

In this opinion the other judges concurred.