STATE OF CONNECTICUT *v.* VICTOR L. JORDAN
(AC 29163)

DiPentima, Robinson and Mihalakos, Js.

Argued September 24—officially released December 29, 2009

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*C. Robert Satti, Jr.*, supervisory assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Jonathan C. Benedict*, former state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Victor L. Jordan, appeals from the judgment of conviction, rendered after a jury trial, of reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a). On appeal, the defendant claims that the court improperly (1) denied his request to represent himself, (2) restricted cross-examination and (3) allowed the state to make a missing witness argument. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 2, 2004, at approximately 2:20 a.m., the defendant was operating a motorcycle northbound on Interstate 95, just past exit thirty. Jennifer Diaz was a passenger on the defendant's motorcycle. The defendant was driving alongside Rodney Howard, who was driving a motorcycle with passenger Country Washington, and George Hutchings, who was driving a car with passengers Corey Cook and Tonya Ellis. While operating the motorcycle at an excessive rate of speed, the defendant struck a motor vehicle operated by Ricardo Ringor, causing Diaz to be ejected from the motorcycle. Diaz sustained fatal injuries from the accident. The state charged the defendant with manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3), misconduct with a motor vehicle in violation of General Statutes § 53a-57 (a) and reckless endangerment in the first degree in violation of § 53a-63 (a).

On January 24, 2007, the court heard the defendant's motion to dismiss counsel. The defendant requested that his attorney, William R. Schipul, be dismissed and that either he be allowed to represent himself or a special public defender be appointed as counsel or standby counsel. The defendant argued that he was unhappy with the fact that his trial was delayed because his attorney was on trial for another client and that the defendant was "willing to handle [his] case." The defendant also proposed that there was a conflict of interest between him and his attorney because his attorney had represented a codefendant in a case seventeen years before. Finally, the defendant argued that he disagreed with his attorney's determination not to present forensic experts.[1] The court denied this motion on the

---

[1] At the motion hearing, the prosecutor, Schipul and the defendant agreed that the defendant originally requested to represent himself, was canvassed properly and was allowed to proceed. His standby counsel was originally David Abbamonte, but during the course of the proceedings he died and Schipul was appointed standby counsel. During a previous motion hearing,

ground that it had heard no substantive reason to grant the motion.

In February, 2007, at trial, the defendant questioned Ringor about whether his license was suspended at the time of the accident and whether he had ever received any speeding tickets. The court ruled that evidence of prior license suspension was not admissible and that testimony concerning past speeding tickets was not relevant. The court further stated that "even if it were relevant, it would be a classic application of § 4-3 of [the Connecticut] Code of Evidence."[2] The defendant then requested that he be allowed to ask Ringor about his citizenship in front of the jury to show motive to fabricate facts about the accident. The court found that Ringor's citizenship status was irrelevant to a motive to lie about the accident and sustained the state's objection. Last, the defendant questioned Ringor about his knowledge of a lawsuit concerning the accident and whether he had spoken to an attorney and an insurance agent about the case. The court found that reference to a lawsuit in front of the jury was irrelevant and improper, but stated that the defendant was free to request any discovery materials regarding the lawsuit from the attorneys involved.

On March 6, 2007, the state filed a motion for permission to argue to the jury the matter of missing witnesses who had not been called by the defendant to testify at trial—Cook, Ellis and Washington. The state argued that Cook and Ellis were in the car with Hutchings,

it became apparent that the defendant did not have the funds or ability to hire expert witnesses, as he wanted to do, and consequently agreed to have Schipul appointed as counsel.

[2] Section 4-3 of the Connecticut Code of Evidence provides: "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

another witness, and could, therefore, provide testimony as to what they saw, and that the state had asked if they were available to testify and that Howard and Hutchings indicated that they were available. Further, the state argued that Washington was on the back of another witness' motorcycle and could have been in a position to see the collision. The defendant argued that the testimony of Ellis and Cook would be duplicative and that, due to the way that passengers on motorcycles are seated, Washington was not in a position to see anything. The court granted the state's motion and noted that the defendant was allowed to make similar arguments in rebuttal.

On March 8, 2007, the jury returned a verdict of guilty as to the third charge of reckless endangerment but was deadlocked on the first and second charges of manslaughter in the first degree and misconduct with a motor vehicle. The court declared a mistrial on the first and second counts and accepted the guilty verdict on the count of reckless endangerment. The court then sentenced the defendant to time served, which amounted to approximately fifteen months in pretrial detention. This appeal followed.

I

We begin our analysis with the defendant's claim that the court improperly denied his request to represent himself because the court failed to canvass him before denying his request. "[T]he United States Supreme Court [has] concluded that the sixth amendment embodies a right to self-representation and that a defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so." (Emphasis in original; internal quotation marks omitted.) *State* v. *Flanagan*, 293 Conn. 406, 417, 978 A.2d 64 (2009). Practice Book § 44-3 was implemented to ensure that a defendant's

request to represent himself is actually voluntary and intelligent by requiring the court to conduct an inquiry into the defendant's awareness of the consequences of his request before allowing him to represent himself.[3] Id., 419. The requirement that a court canvass a defendant is not triggered, however, until it has been established that the defendant clearly and unequivocally requested to represent himself. Id., 421. The first piece of the analysis, therefore, is whether the defendant's request to represent himself was clear and unequivocal.

A

The defendant claims that he clearly invoked his right to represent himself by filing a motion to dismiss counsel with the court and through his statements during the hearing on the motion. In the defendant's motion to dismiss counsel, he requested that the court remove Schipul and either allow the defendant to proceed pro se or appoint a special public defender to represent the defendant or to serve as standby counsel. In response to questions from the court as to why the defendant wanted to dismiss Schipul as counsel, he stated that he previously made clear that he would handle his case as a self-represented litigant and was "willing to do [so] under the circumstances at this moment and time."

---

[3] Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

After expressing dismay about the amount of time it was taking to reach trial, the defendant again said, "I'm willing to handle my case and have this case brought to trial." We do not agree that this was a clear and unequivocal request to represent himself.

"[W]hether the defendant's request was clear and unequivocal presents a mixed question of law and fact, over which . . . our review is plenary." *State* v. *Flanagan*, supra, 293 Conn. 420. Accordingly, we review the issue of whether the defendant's request was clear and unequivocal de novo. Id., 420 n.10. "The threshold requirement that the defendant clearly and unequivocally invoke his right to proceed pro se is one of many safeguards of the fundamental right to counsel." Id., 423. "To invoke his [s]ixth [a]mendment right [to self-representation] under *Faretta* [v. *California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)] a defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to his request. Insofar as the desire to proceed pro se is concerned, [a defendant] must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made." (Internal quotation marks omitted.) *State* v. *Flanagan*, supra, 423–24.

As our Supreme Court previously has observed, however, "[t]he right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel. . . . When an accused

manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently [forgo] those relinquished benefits." (Internal quotation marks omitted.) *State* v. *Connor*, 292 Conn. 483, 508, 973 A.2d 627 (2009).

The defendant did not clearly choose the right to represent himself over the right to be represented by counsel. Rather, he requested, in his motion to dismiss counsel, that he either be permitted to represent himself or be appointed new counsel or standby counsel.[4] Though the defendant stated that he was willing to represent himself, his motion filed with the court suggests that he was open to various forms of representation. In essence, the defendant was attempting to exercise the right to counsel and the right of self-representation simultaneously. Precedent instructs us that absent evidence that the defendant has made a clear choice between the two rights, a court cannot determine that the defendant clearly and unequivocally has requested to represent himself. Id. We, therefore, conclude that the defendant did not clearly and unequivocally request self-representation.

## B

The defendant also claims that he was denied the right to represent himself because the court failed to canvass him before deciding his request. Our Supreme Court has reiterated, however, that the court is only required to canvass a defendant after the defendant clearly and unequivocally has requested to represent

---

[4] Although titled "Motion to Dismiss Counsel," the defendant's handwritten motion to dismiss provides in relevant part: "I conclude that the court should either [d]ismiss [a]ttorney Schipul as [the] defendant['s] counsel and allow [the] defendant to file [pro se; Practice Book § 44-3;] or appoint a special public defender as counsel or standby [counsel. Practice Book § 44-4]."

himself. *State* v. *Flanagan,* supra, 293 Conn. 420. Because we conclude that the defendant's request was not clear and unequivocal, whether the defendant was properly canvassed is moot. We, therefore, do not reach the second prong of the analysis.

## II

The defendant next claims that the court improperly restricted his cross-examination of Ringor on three occasions. He contends that the court improperly prohibited him from questioning Ringor about (1) prior speeding tickets and license suspensions, (2) Ringor's United States citizenship and (3) whether Ringor contemplated filing a lawsuit in connection with the case.

The court's ruling on proffered testimony is an evidentiary ruling requiring review under the abuse of discretion standard. *State* v. *Santiago,* 103 Conn. App. 406, 430, 931 A.2d 298, cert. denied, 284 Conn. 937, 937 A.2d 695 (2007). "To establish an abuse of discretion, it must be shown that restrictions imposed on cross-examination were clearly prejudicial." (Internal quotation marks omitted.) *State* v. *Oliphant,* 115 Conn. App. 542, 550, 973 A.2d 147, cert. denied, 293 Conn. 912, 978 A.2d 1113 (2009). This court will "make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Santiago,* supra, 430. After analyzing the court's restrictions on cross-examination, we find no abuse of discretion.

The defendant first claims that the court improperly restricted him from questioning Ringor about his prior speeding convictions and license suspensions because they would be irrelevant and, moreover, with respect to speeding convictions, any probative value was outweighed by the danger of prejudice. The court noted that it already had ruled on the issue in this case and found that license suspensions were not admissible in

cases of motor vehicle accidents as evidence of character, and, therefore, of fault. This reasoning is predicated on Connecticut Code of Evidence § 4-5, which prohibits the admission of certain evidence to show bad character or criminal tendencies. We find that the defendant was not clearly prejudiced and that no abuse of discretion occurred because the court properly was complying with the Connecticut Code of Evidence.

The defendant next claims that the court improperly excluded testimony from Ringor pertaining to Ringor's status as a United States citizen, which the defendant contends had the potential to show a motive to lie to avoid possible felony charges that could lead to his deportation. "The proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant." (Internal quotation marks omitted.) *State v. Gaskin*, 116 Conn. App. 739, 748, 977 A.2d 681 (2009). The court entertained the theory that the testimony would manifest Ringor's motive to lie but found it too far-fetched to bolster the defendant's argument. In support, the court provided the logical reasoning that people, in general, avoid felony charges and that not being a United States citizen does not heighten the desire to avoid such charges. We agree and conclude that the defendant was not clearly prejudiced by this ruling.

Finally, the defendant claims that the court improperly restricted him from questioning Ringor about whether Ringor contemplated filing a lawsuit in regard to the accident. This issue, however, was not raised at trial, and "[appellate courts] will not consider claimed errors on the part of the trial court unless it appears that the question was distinctly raised at the trial and was ruled upon and decided by the trial court . . . ."[5]

---

[5] The defendant asked Ringor a series of questions outside the presence of the jury regarding Ringor's knowledge of any lawsuit connected with the accident, conversations he had with attorneys and insurance agents, and ownership of the car Ringor was driving. The court commented that none

(Internal quotation marks omitted.) *State* v. *Groomes*, 232 Conn. 455, 465, 656 A.2d 646 (1995). Accordingly, we decline to review this claim.

## III

Finally, the defendant argues that the court improperly granted the state's motion to make a missing witness argument. Specifically, the defendant contends that the state offered no proof that the witnesses, Cook, Ellis and Washington, actually were available to testify. Further, the defendant asserts that even if the witnesses had been available, the state failed to offer proof of their testimony and how it would have been detrimental to his case. We conclude that although the court abused its discretion by allowing the missing witness argument, the argument did not deprive the defendant from receiving a fair trial.

We review the court's decision allowing the state to include a missing witness argument in its closing argument for abuse of discretion. *State* v. *Cruz*, 71 Conn. App. 190, 210–11, 800 A.2d 1243, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002). "It is within the discretion of the trial court to limit the scope of final argument . . . ." (Internal quotation marks omitted.) *State* v. *Saunders*, 114 Conn. App. 493, 505 n.12, 969 A.2d 868, cert. denied, 292 Conn. 917, 973 A.2d 1277 (2009). "The broad discretion vested in trial courts by [*State* v. *Malave*, 250 Conn. 722, 737 A.2d 442 (1999), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000)] mirrors the general standards regarding the trial court's ability to limit closing argument. [T]he

of Ringor's answers seemed relevant but that the matter of a lawsuit could be revisited after further discovery. The court then allowed the defendant to question Ringor, in the presence of the jury, on the two points. Schipul specifically asked to question him about whether he was concerned about being blamed for the accident and who was the owner of the car involved in the accident. Schipul then continued with cross-examination and made no further objections or requests.

scope of final argument lies within the sound discretion of the court . . . subject to appropriate constitutional limitations." (Internal quotation marks omitted.) *State* v. *Gaskin*, supra, 116 Conn. App. 757. We first "determine whether the trial court abused its discretion in light of the information before the court when it ruled on the motion. If there was such an abuse of discretion, the reviewing court must determine whether the defendant has established that, in light of the totality of evidence at trial and the trial court's subsequent instructions to the jury, the impropriety constituted harmful error." *State* v. *Davis*, 286 Conn. 17, 53–54, 942 A.2d 373 (2008) (*Katz, J.*, concurring).

A

We first assess whether the court abused its discretion in granting the state's motion to make a missing witness argument. Either party in a criminal case may make "appropriate comment, in closing arguments, about the absence of a particular witness, insofar as that witness' absence may reflect on the weakness of the opposing party's case. . . . So long as counsel does not directly exhort the jury to draw an adverse inference by virtue of the witness' absence . . . ." *State* v. *Malave*, supra, 250 Conn. 739. As justification for its request, "counsel must demonstrate that such witness was available to testify, set forth the substance of the testimony that such witness would have given had he been called to the witness stand and explain how his testimony would have been detrimental to the [opposing party's] case. Evidence that would have been merely cumulative or of no consequence to a reasonable assessment of the [opposing party's] case, for example, would not warrant such an argument." *State* v. *Mungroo*, 104 Conn. App. 668, 677, 935 A.2d 229 (2007), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008). After hearing the party's justification, the court retains broad discretion to allow or to preclude either party from making such

a comment in its closing statement. *State* v. *Malave*, supra, 740.

When proving availability, counsel seeking to make the missing witness argument must offer evidence to support the witness' availability and the court must make a finding that the witness was actually available to testify. *Raybeck* v. *Danbury Orthopedic Associates, P.C.*, 72 Conn. App. 359, 365, 805 A.2d 130 (2002). For example, counsel can "serve a subpoena on that witness and put the subpoena in evidence to show that that person was available or, for instance . . . [in a case where] the wife is the passenger. The husband is the plaintiff. The question is who had the red light. The husband doesn't call the wife as a witness. Then the husband's on the witness stand and [the attorney says], by the way, where's your wife? [The husband responds] [w]ell, she's home. Established availability." (Internal quotation marks omitted.) Id., 367 n.4, quoting Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1998 Sess., p. 1564, remarks of Robert Adelman on behalf of the Connecticut Trial Lawyers Association.

In the present case, when asked about the availability of the witnesses, the prosecutor informed the court that he had asked Howard and Hutchings, two other witnesses, if Ellis and Cook were in the area and available to testify, and they indicated that they were. There is no testimony from either witness, however, that they knew of Ellis' or Cook's availability. Further, at the hearing on the motion, the court asked the state about the availability of Washington, but the state provided no answer. The state did not establish that any of the three witnesses included in the missing witness argument were actually available to testify. See *Raybeck* v. *Danbury Orthopedic Associates, P.C.*, supra, 72 Conn. App. 367–68 (holding that counsel must prove witnesses' availability through evidence presented at trial).

We, therefore, conclude that the court abused its discretion in allowing the state to make a missing witness argument. Consequently, we now turn to the second part of our analysis, which is whether the abuse of discretion constituted harmful error.

## B

"The dispositive question in harmful error analysis is whether we have a fair assurance that the defendant received a fair trial." *State* v. *Davis*, supra, 286 Conn. 55 (*Katz, J.*, concurring). This may be determined by considering "whether the jury's verdict was substantially swayed by the error." *State* v. *Sawyer*, 279 Conn. 331, 357, 904 A.2d 101 (2006) (en banc). The thrust of the standard is to look to the effect of the error and to determine if it had little to no impact on the defendant's conviction. Id., 355–57.

The gravamen of the defendant's defense was that Ringor moved his vehicle into the left lane without ensuring that the lane was clear, collided with the defendant and caused the accident. The state's missing witness argument consisted of a few brief sentences commenting on the amount of evidence supporting the defendant's contention that Ringor's car went into the left lane. Howard testified that he was driving a motorcycle alongside the defendant and saw Ringor move into the defendant's lane and cause the accident. The state's reference to Washington's absence was weak because she was on Howard's motorcycle, so it is as likely that the jury inferred that her testimony would have supported Howard's testimony as it is that the jury assumed it would contradict it. Further, the state did not present any evidence to the jury that Washington actually was available to testify and that the defendant purposefully did not call her as a witness because he preferred her to be absent.

Further, Cook and Ellis were in the car with Hutchings, who testified that he lost sight of the motorcycles on the highway. The state's comment that Cook and Ellis did not testify was likely nugatory because Hutchings, the driver of the car that they were in, testified that he had lost sight of the motorcycles and did not see the accident. His testimony was used mainly to establish the speed of the motorcycles. It is, therefore, unlikely that the jury would have inferred that the two missing witnesses in the car would have provided testimony adverse to the defendant regarding the witnesses' observation of the accident.

Finally, the court specifically informed the defendant that he was welcome to include an argument in his closing statement rebutting the inference that he did not call these three witnesses to testify because they would have been harmful to his case. The defendant, however, neglected to do so. This leads us to believe that, at the time of trial, the defendant did not view the missing witness argument as being particularly damaging.

In light of all of the evidence, we conclude that the brief argument " 'did not substantially affect the verdict.' " *State* v. *DeJesus*, 288 Conn. 418, 476 n.38, 953 A.2d 45 (2008). Therefore, the error was harmless.

The judgment is affirmed.

In this opinion the other judges concurred.