STATE OF CONNECTICUT *v*. MAURICE FLANAGAN
(SC 17990)

Norcott, Katz, Palmer, Zarella and Pittman, Js.

Argued May 27—officially released September 15, 2009

*Richard W. Callahan*, special public defender, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, *Herbert E. Carlson, Jr.*, supervisory assistant state's attorney, and *Kevin J. Murphy*, senior assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The defendant, Maurice Flanagan, appeals, following our grant of his petition for certification,[1] from the judgment of the Appellate Court

---

[1] We granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the trial court did not violate the defendant's constitutional right to self-representation?" *State* v. *Flanagan*, 284 Conn. 922, 933 A.2d 725 (2007).

affirming the trial court's judgment of conviction, rendered after a jury trial, of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-48 (a). *State* v. *Flanagan*, 102 Conn. App. 105, 106–107, 925 A.2d 385 (2007) (en banc) (*Flanagan II*). On appeal, the defendant claims: (1) that the Appellate Court improperly concluded that he had not clearly and unequivocally invoked his right to self-representation under the sixth amendment[2] to the United States constitution;[3] and (2) in response to an alternate ground for affirmance proffered by the state, that the trial court improperly applied an "exceptional circumstances" test in ruling on the timeliness of his request to represent himself. We agree with both of the defendant's claims and, accordingly, we reverse the judgment of the Appellate Court.

The record and the Appellate Court decision reveal the following relevant facts and procedural history. In connection with a gang related drive-by shooting in New Britain in 1994, the state charged the defendant with two counts of murder in violation of General Statutes §§ 53a-54a (a) and 53a-8, two counts of criminal attempt to commit murder in violation of General Stat-

---

[2] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the [s]tate and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

[3] Although the defendant also refers in his brief to the right to self-representation afforded under article first, § 8, of our state constitution, he has not provided any independent analysis concerning whether the protections under that provision are greater than those afforded under the federal constitution. Accordingly, we limit our review to the defendant's right to self-representation under the federal constitution. See, e.g., *State* v. *Colon*, 272 Conn. 106, 154 n.26, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

utes §§ 53a-54a (a), 53a-8 and 53a-49 (a) (2), one count of conspiracy to commit murder in violation of §§ 53a-54a (a) and 53a-48 (a), and one count of conspiracy to commit assault in the first degree in violation of §§ 53a-59 (a) (1) and 53a-48 (a). "At trial, the defendant was represented by a special public defender. On several occasions during the trial, the defendant expressed his dissatisfaction with his attorney's performance. Prior to jury selection, the defendant filed a motion to dismiss his attorney. The defendant claimed that his attorney was not investigating the case adequately. The defendant's attorney acknowledged the existence of problems with investigating matters related to the case and made representations to the court concerning his investigative efforts. The court thereafter denied the defendant's motion, noting that the defendant's attorney had been a 'great advocate' for the defendant.

"On March 18, 2003, just before the state rested its case, the court conducted an in-chambers conference with the prosecutor and the defendant's attorney. The defendant's attorney informed the court that he did not intend to call any witnesses and that the defendant disagreed with this aspect of his trial strategy. The court subsequently stated to the defendant in open court that it was aware of the proposed strategy of the defendant's attorney as well as the defendant's dissatisfaction with it. The court stated: 'Did you want to tell me anything about that? You don't need to tell me anything about it, but I just wanted to give you an opportunity, if you did, to be heard yourself. It's [your attorney's] decision, but I understand sometimes that counsel and their clients can have different points of view, and [your attorney] told me that you and he do have a different point of view. I just want to give you an opportunity, if you wish to, to make me aware of what your point of view is. Did you want to say anything?'

"The defendant replied that he viewed his attorney's strategy as being 'too narrow' and that he believed that, if the defense called witnesses to testify, the jury would be able to evaluate the case 'from a different angle.' The defendant expressed his view that for the defense not to present any evidence would afford the jury only 'one option,' which would lead to a finding of guilt. The defendant analogized his attorney's strategy to one used in the game of chess and opined that it was inappropriate. The defendant also recalled that, in a prior trial, the jury found him guilty after the attorney representing him in that case did not present any evidence in his defense.

"The court informed the defendant that 'these kind of tactical decisions' were for his attorney to make after consulting with the defendant. The court asked the defendant's attorney if he had discussed this strategy with the defendant; the defendant's attorney represented that he had done so. The defendant's attorney added that, after additional consideration, he had become 'even more solid in [his] position' to forgo the presentation of any evidence.

"The court then addressed the defendant as follows: 'I can't fully appreciate your feelings because I'm not in your place. I certainly understand, I think, your reservations, having gone through this experience once. At the same time, these are [your attorney's] decisions. He's a very experienced attorney. He has tried many cases. I've had the opportunity to observe his performance in this case from . . . January 8, 2003, when we had some hearings on motions. As far as I'm concerned, his performance has been beyond competent and [has] been superior. If these are his decisions, I'm sure he has given them ample consideration. I'm sure he has taken into consideration your feelings about it, and those are decisions that are left to the attorney for good reason, sir.' . . .

"After the court discussed other matters with the prosecutor, it canvassed the defendant concerning his decision to waive his right to testify. The court thereafter informed the defendant's attorney and the prosecutor that, absent a request to the contrary from the defendant's attorney, it would deliver the standard instruction informing the jury that it could draw no adverse inference from the defendant's decision not to testify. The following colloquy between the defendant and the court then took place:

" '[The Defendant]: Excuse me, Your Honor. Don't I have the right to finish this case myself without him there?

" 'The Court: In a word, no. But are you making that request to represent yourself in the remainder of the case?

" '[The Defendant]: I mean, if he's not going to do what I feel is in my best interest, I don't think that he should be my attorney. I mean, this is my life. Like I explained to him, when this is over, if I lose, he just goes on to another case. I'm the one who has to go to jail. And he's not doing what I feel is in my best interest. He's doing what he feels is in his best interest, not mine. So, I don't understand how his interest comes before my interest.

" 'The Court: Well, it doesn't appear to me, Mr. Flanagan, based on my observations of [your attorney's] performance from January 8, 2003, to today, which is March 18, 2003, that his decisions and his actions have been in his interest as opposed to yours. So, I'm—and I can't imagine why he'd be changing courses now. I mean, [your attorney's] decisions, as best as I have observed, have been solely in your interest. And his performance has been beyond competent and, in my view, superior over the last two and one-half months. So, while you may disapprove of his trial tactics, and I understand

your feelings, his obligation is to consult with you and then to make his best professional decisions. The fact that you disagree with him over trial tactics does not, at this stage of the case where the state is about to rest, after we have been on trial essentially for about two and one-half months, does not constitute the kind of exceptional circumstances that I would have to find in order for me to allow you either to have a new lawyer or to represent yourself at this point in time. So, if you're making a request of me that you be allowed to represent yourself or that you be allowed to retain or have new counsel appointed for you, that request is denied.' The defendant did not address the court further, the defendant's attorney did not address the court with regard to the defendant's statements and the court thereafter turned its attention to other matters. The defendant's attorney did not present any evidence on the defendant's behalf.

"At the commencement of court proceedings two days later, on March 20, 2003, the court addressed the defendant's attorney with regard to whether it should continue to permit the defendant to remain unshackled in the courtroom during the proceedings. The court explained that it asked the defendant's attorney to speak to him with regard to this issue, as follows: 'I asked [your attorney] to do that, Mr. Flanagan, because I know you're angry and disappointed the other day at the turn things took about resting and my not permitting you to represent yourself.' The defendant's attorney related to the court that 'strategic differences' between himself and the defendant continued to exist. After the court addressed other matters before it, the defendant's attorney informed the court that the defendant desired to state something 'on the record for his own sake at [that] point because we do have the disagreement.' With the court's permission, the defendant stated, 'I just want to put it on the record that I wanted to call witnesses

and that I feel that this is being done against my will and it's not what I want.' The court noted that the defendant's comments were reflected in the record." *State* v. *Flanagan,* supra, 102 Conn. App. 107–11. The jury subsequently returned a verdict finding the defendant guilty of conspiracy to commit assault in the first degree in violation of §§ 53a-59 (a) (1) and 53a-48 (a), and not guilty of the other charges. The trial court rendered a judgment of conviction in accordance with the jury's verdict and sentenced the defendant to a term of twenty years incarceration, execution suspended after thirteen years, and five years of probation.

The defendant appealed from the judgment of conviction to the Appellate Court, claiming, inter alia, that the trial court had violated his right to self-representation.[4] *State* v. *Flanagan,* 93 Conn. App. 458, 468, 890 A.2d 123 (2006) (*Flanagan I*). In a divided opinion, a three judge panel of the Appellate Court affirmed the judgment of the trial court, concluding that the trial court's failure to canvass the defendant in accordance with Practice Book § 44-3[5] was not improper because the defendant

---

[4] After filing his appeal in the Appellate Court, the defendant filed a motion, seeking to have the trial court articulate: (1) the legal standard of review that the trial court applied when it denied the defendant's purported request to waive counsel and proceed pro se; and (2) the facts found by the trial court relevant to its decision to deny the defendant's purported request to waive counsel and proceed pro se. The trial court denied the motion for articulation. The Appellate Court granted the defendant's subsequent motion for review but denied the relief requested therein, namely, an order that the trial court issue an articulation.

[5] Practice Book § 44-3 provides: "A defendant shall be permitted to waive the right to counsel and shall be permitted to represent himself or herself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of the right to the assistance of counsel, including the right to the assignment of counsel when so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent oneself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

had not made a clear and unequivocal assertion of his right to self-representation. Id., 474. In addition, the Appellate Court majority concluded that the trial court had not abused its discretion in determining that the defendant's request to proceed pro se, which was made at the conclusion of the state's case, was untimely because no "exceptional circumstances" existed to permit the defendant to discharge his counsel midtrial. Id., 478–79.

Thereafter, the Appellate Court granted the defendant's motion for reconsideration and reargument en banc. *State* v. *Flanagan*, supra, 102 Conn. App. 107. At reargument, the defendant claimed that "he [had] 'requested to waive counsel and proceed pro se' and that the court, in the manner that it responded to and analyzed his request, violated his right to self-representation afforded by the federal constitution." Id., 112. The defendant also claimed that, once he had requested to proceed pro se, "the court should have canvassed him in accordance with Practice Book § 44-3 and then, on the basis of such canvass, exercised only limited discretion in ruling on his request"; id.; rather than applying the "exceptional circumstances" test to determine the propriety of his request. Id. The Appellate Court affirmed the judgment of the trial court by a vote of five to four,[6] concluding that the trial court had not improperly failed to canvass the defendant in accordance with Practice Book § 44-3 because the defendant had not clearly and unequivocally asserted his right to self-representation. Id., 132. In light of that conclusion,

---

"(4) Has been made aware of the dangers and disadvantages of self-representation."

[6] The decision of the Appellate Court in *Flanagan II* superseded, in part, that court's decision in *Flanagan I*, specifically on its analysis of the defendant's self-representation claim. *State* v. *Flanagan*, supra, 102 Conn. App. 107 n.2. *Flanagan II* left undisturbed that court's analysis in *Flanagan I* regarding the defendant's other claim raised on appeal, namely, that the evidence adduced at trial was insufficient to sustain his conviction. Id.

the Appellate Court did not address the state's claim that the defendant's request was untimely and, therefore, was properly denied.[7] Id., 113 n.4. This certified appeal followed. See footnote 1 of this opinion.

On appeal to this court, the defendant claims that the Appellate Court improperly concluded that he had not clearly and unequivocally requested to proceed pro

[7] There were two dissenting opinions in *Flanagan II*. In the first dissent, Chief Judge Flynn concluded that the defendant's request to proceed pro se was clear and unequivocal, noting that the fact that the trial court denied the defendant's request was evidence that the request clearly had been made. *State* v. *Flanagan*, supra, 102 Conn. App. 134–35, 137–38. Chief Judge Flynn also concluded that the trial court improperly applied the "exceptional circumstances" test when it ruled on the timeliness of the defendant's request. Id., 141–42. Chief Judge Flynn determined that, if the case was reviewed only under the federal constitution, the federal balancing test employed by the United States Court of Appeals for the Second Circuit was the appropriate test, under which the trial court weighs the defendant's right to self-representation against the potential for disruption of the proceedings already in progress. Id., 143. Additionally, Chief Judge Flynn concluded that the majority should have reviewed the defendant's claim under the state constitution, because the defendant had contended on appeal that the trial court had violated Practice Book § 44-3 and that this court had ruled, in *State* v. *Wolff*, 237 Conn. 633, 653–54, 678 A.2d 1369 (1996), that the requirements of Practice Book § 44-3 are coextensive with the constitutional requirements. *State* v. *Flanagan*, supra, 148 n.13. Chief Judge Flynn further contended that the provision of Practice Book § 44-3 providing that a defendant shall be permitted to represent himself "at any stage of the proceedings" negates any timeliness requirement and, therefore, that the defendant's midtrial request to proceed pro se was not untimely. Id., 148–49.

In the second dissent, then Judge Rogers, joined by Judge DiPentima and then Judge McLachlan, concluded that the fact that the trial court had denied the defendant's request to proceed pro se "compels the conclusion that the request was communicated adequately." Id., 150. As to the timeliness issue, Judge Rogers agreed with Chief Judge Flynn that the trial court should have conducted the federal balancing test employed by the Second Circuit and that the trial court, therefore, improperly applied the "exceptional circumstances" test to the defendant's request. Id., 151. Judge Rogers disagreed, however, with Chief Judge Flynn on his assertion that Practice Book § 44-3 eliminates any timeliness consideration. Id., 152. Instead, Judge Rogers concluded that our case law requires the conclusion that Practice Book § 44-3 be interpreted so as not to enlarge the right to self-representation but, rather, "to mirror its scope as established by the jurisprudence concerning that right." Id., 153. Judge Rogers concluded, therefore, that "timeliness is an appropriate consideration for a court in determining whether [a request to proceed pro se] ought to be permitted." Id., 154.

se. In response, the state contends otherwise, and also claims that the trial court properly applied an "exceptional circumstances" test in concluding that the defendant's request was both untimely and prejudicial to the state and, therefore, was improper. We address each claim in turn.

I

As a preliminary matter, we set forth several well settled principles regarding the constitutional right of a criminal defendant to represent himself. The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." The sixth amendment right to counsel is made applicable to state prosecutions through the due process clause of the fourteenth amendment. See, e.g., *Gideon* v. *Wainwright*, 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). In *Faretta* v. *California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the United States Supreme Court concluded that the sixth amendment embodies a right to self-representation and that "a defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so." (Emphasis in original.) See also *Adams* v. *United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942) ("[T]he [c]onstitution does not force a lawyer upon a defendant. He may waive his [c]onstitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open."). The Supreme Court has further stated that "[w]e confront here a nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so.

"This consensus is soundly premised. The right of self-representation finds support in the structure of the [s]ixth [a]mendment, as well as in the English and colonial jurisprudence from which the [a]mendment emerged." *Faretta* v. *California*, supra, 422 U.S. 817–18. Moreover, the court noted that unwanted counsel represents the defendant "only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the [c]onstitution, for, in a very real sense, it is not *his* defense." (Emphasis in original.) Id., 821.

This court consistently has recognized "the inviolability of the right of self-representation"; *State* v. *Brown*, 256 Conn. 291, 302, 772 A.2d 1107, cert. denied, 534 U.S. 1068, 122 S. Ct. 670, 151 L. Ed. 2d 584 (2001); and that the right "is also consistent with the ideal of due process as an expression of fundamental fairness. To force a lawyer on a defendant can only lead him to believe that the law contrives against him." (Internal quotation marks omitted.) Id. "The right to counsel and the right to self-representation present mutually exclusive alternatives. A criminal defendant has a constitutionally protected interest in each, but since the two rights cannot be exercised simultaneously, a defendant must choose between them. When the right to have competent counsel ceases as the result of a sufficient waiver, the right of self-representation begins. . . . Put another way, a defendant properly exercises his right to self-representation by knowingly and intelligently waiving his right to representation by counsel." (Internal quotation marks omitted.) *State* v. *T.R.D.*, 286 Conn. 191, 202, 942 A.2d 1000 (2008). Furthermore, "[w]hen an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelli-

gently [forgo] those relinquished benefits." (Internal quotation marks omitted.) Id., 202–203. Although a defendant need not have the skill and expertise of an attorney to competently and intelligently choose to proceed pro se, "a record that affirmatively shows that [he] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will sufficiently supports a waiver." *State* v. *Wolff*, 237 Conn. 633, 654–55, 678 A.2d 1369 (1996).

With these principles in mind, Practice Book § 44-3; see footnote 5 of this opinion; "was adopted in order to implement the right of a defendant in a criminal case to act as his own attorney . . . . Before a trial court may accept a defendant's waiver of counsel, it must conduct an inquiry in accordance with § [44-3], in order to satisfy itself that the defendant's decision to waive counsel is knowingly and intelligently made. . . . Because the § [44-3] inquiry simultaneously triggers the constitutional right of a defendant to represent himself and enables the waiver of the constitutional right of a defendant to counsel, the provision of § [44-3] cannot be construed to require anything more than is constitutionally mandated."[8] (Internal quotation marks omitted.) *State* v. *T.R.D.*, supra, 286 Conn. 203.

Finally, we begin our analysis of the defendant's claims[9] by setting forth the applicable standard of

---

[8] Thus, a defendant "does not possess a constitutional right to a specifically formulated canvass [with respect to this inquiry]. His constitutional right is not violated as long as the court's canvass, whatever its form, is sufficient to establish that the defendant's waiver was voluntary and knowing. . . . In other words, the court may accept a waiver of the right to counsel without specifically questioning a defendant on each of the factors listed in . . . § [44-3] if the record is sufficient to establish that the waiver is voluntary and knowing." (Internal quotation marks omitted.) *State* v. *Diaz*, 274 Conn. 818, 831, 878 A.2d 1078 (2005); see also *State* v. *D'Antonio*, 274 Conn. 658, 709, 877 A.2d 696 (2005) ("we do not review the proceedings for strict compliance with the prophylactic rule of . . . § 44-3, but rather for evidence that the waiver of counsel was made knowledgeably and voluntarily").

[9] The defendant asserts that his claims are preserved for review, but to the extent that we do not find his claims preserved, he requests review

review. We ordinarily review for abuse of discretion a trial court's determination, made after a canvass pursuant to Practice Book § 44-3, that a defendant has knowingly and voluntarily waived his right to counsel. See, e.g., id., 202. In the present case, however, the defendant claims that the trial court improperly failed to exercise that discretion by canvassing him after he clearly and unequivocally invoked his right to represent himself. Accordingly, whether the defendant's request was clear and unequivocal presents a mixed question of law and fact, over which, as the Appellate Court recognized, our review is plenary.[10] See *State* v. *Carter*, 200 Conn. 607,

under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and the plain error doctrine. See Practice Book § 60-5. We conclude, however, that the defendant's claims are preserved for review and we need not consider the claims under either doctrine.

[10] Relying on *In re Tyqwane V.*, 85 Conn. App. 528, 857 A.2d 963 (2004), the defendant challenges the plenary standard of review applied by the Appellate Court, and claims that it cannot withstand due process scrutiny under *Mathews* v. *Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Specifically, rather than the Appellate Court reviewing the whole record on appeal, the defendant advocates a per se rule: if the trial court ruled on a request to proceed pro se, then such a request was per se clear and unequivocal. Further, if a trial court has not ruled on such a request, then the Appellate Court is to determine whether the trial court abused its discretion in not recognizing the existence of such a request. The state contends that the defendant's claim is unreviewable because he did not raise it in his petition for certification to appeal and because it is outside the scope of the certified issue. Even if the issue is reviewable, the state asserts that the proper standard of review is de novo review, the standard employed by the Appellate Court.

Although we conclude that the issue of whether the Appellate Court applied the proper standard of review necessarily is within the scope of the certified question, we also conclude that the Appellate Court properly engaged in de novo review on the issue of whether the defendant clearly and unequivocally had requested to proceed pro se. Our courts consistently have applied an independent and, in effect, de novo review in determining this same issue. See, e.g., *State* v. *Carter*, 200 Conn. 607, 611, 614, 513 A.2d 47 (1986) (conducting independent review of record to determine if request was clear and unequivocal); *State* v. *Gethers*, 197 Conn. 369, 378, 497 A.2d 408 (1985) (same); *State* v. *Williams*, 64 Conn. App. 512, 530–31, 781 A.2d 325 (same), cert. granted, 258 Conn. 911, 782 A.2d 1251 (2001) (appeal dismissed April 24, 2003). Moreover, courts from other jurisdictions have engaged in de novo review of this issue, particularly on direct appeal. See,

611, 614, 513 A.2d 47 (1986); *State* v. *Flanagan*, supra, 102 Conn. App. 123–24; see also *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 239, 654 A.2d 342 (1995) (failure to exercise discretion is improper as matter of law); *State* v. *Martin*, 201 Conn. 74, 88, 513 A.2d 116 (1986) ("[w]hile it is normally true that this court will refrain from interfering with a trial court's exercise of its discretion . . . this presupposes that the trial court did in fact *exercise* its discretion" [citation omitted; emphasis in original]). Finally, whether the trial court improperly applied the "exceptional circumstances" test to the timeliness of the defendant's request presents a question of law, over which our review is plenary. See *Fish* v. *Fish*, 285 Conn. 24, 37, 939 A.2d 1040 (2008).

## II

We first address whether the defendant's request to proceed pro se was sufficiently clear and unequivocal such that the trial court was required to canvass him pursuant to Practice Book § 44-3. The defendant claims that the Appellate Court misconstrued the record when

e.g., *United States* v. *Cano*, 519 F.3d 512, 515–16 (5th Cir. 2008) (applying de novo review to determine whether request was clear and unequivocal); *United States* v. *Hernandez*, 203 F.3d 614, 621–23 (9th Cir. 2000) (conducting independent review of record to determine if request was clear and unequivocal), overruled in part on other grounds by *United States* v. *Ferguson*, 560 F.3d 1060 (9th Cir. 2009); *Raulerson* v. *Wainwright*, 732 F.2d 803, 808–809 (11th Cir.) (same), cert. denied, 469 U.S. 966, 105 S. Ct. 366, 83 L. Ed. 2d 302 (1984); *People* v. *Danks*, 32 Cal. 4th 269, 295, 82 P.3d 1249, 8 Cal. Rptr. 3d 767 ("[i]n determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo" [internal quotation marks omitted]), cert. denied, 543 U.S. 961, 125 S. Ct. 441, 160 L. Ed. 2d 326 (2004); *People* v. *Abdu*, Colorado Court of Appeals, Docket No. 05CA1083, 2009 Colo. App. LEXIS 812, *3 (May 14, 2009) (de novo review appropriate for determination of whether request was clear and unequivocal); *State* v. *Ochoa*, 675 N.W.2d 161, 169 (N.D. 2004) (same). Furthermore, *In re Tyqwane V.* does not support the defendant's argument, in that the court in that case did not address whether due process was implicated by the application of a particular appellate standard of review, and did not cite any case law supporting such a conclusion. See *In re Tyqwane V.*, supra, 85 Conn. App. 537.

it determined that he had not clearly and unequivocally requested to proceed pro se. Contrary to the Appellate Court's conclusion, the defendant asserts that the explicit ruling of the trial court categorically denying that request clearly demonstrates that the trial court understood that the request had been made.[11] In response, the state contends that the Appellate Court properly concluded that the trial court had not violated the defendant's right to self-representation because the defendant's request to proceed pro se was not clear and unequivocal. Specifically, relying on the majority opinion of the Appellate Court in *Flanagan II*, the state contends that the defendant merely inquired about— but did not assert—his right to waive counsel and proceed pro se. The state also claims that the trial court's acknowledgment of the issue of substitute counsel, as well as the fact that the defendant never made any other request on the record to proceed pro se, weighs against a finding of a clear and unequivocal waiver of counsel. Accordingly, because it asserts that the Appellate Court properly determined that the defendant's request was not clear and unequivocal, the state further contends that the trial court was not required, pursuant to Practice Book § 44-3, to canvass the defendant regarding his waiver. We agree with the defendant and conclude that the defendant's request for self-representation was sufficiently clear and unequivocal to trigger the trial court's obligation to canvass him in accordance with § 44-3.

State and federal courts "consistently have discussed the right to self-representation in terms of invoking or

---

[11] The defendant also claims that the trial court later reiterated that ruling when it told the defendant that, "if you're making a request of me that you be allowed to represent yourself or that you be allowed to retain or have a new counsel appointed for you, that request is denied," and again two days later when the court stated to the defendant that it knew he was "disappointed the other day at the turn things took about resting and my not permitting you to represent yourself."

asserting it"; *Munkus* v. *Furlong*, 170 F.3d 980, 983 (10th Cir. 1999); and have concluded that there can be no infringement of the right to self-representation in the absence of a defendant's proper assertion of that right. See *Daniels* v. *Lee*, 316 F.3d 477, 490 (4th Cir.), cert. denied, 540 U.S. 851, 124 S. Ct. 137, 157 L. Ed. 2d 93 (2003). The threshold requirement that the defendant clearly and unequivocally invoke his right to proceed pro se is one of many safeguards of the fundamental right to counsel. See *United States* v. *Frazier-El*, 204 F.3d 553, 558 (4th Cir.) ("[t]he particular requirement that a request for self-representation be clear and unequivocal is necessary to protect against an inadvertent waiver of the right to counsel by a defendant's occasional musings on the benefits of self-representation" [internal quotation marks omitted]), cert. denied, 531 U.S. 994, 121 S. Ct. 487, 148 L. Ed. 2d 459 (2000). Indeed, in *State* v. *Carter*, supra, 200 Conn. 612–14, we stated that "[t]he constitutional right of self-representation depends . . . upon its invocation by the defendant in a clear and unequivocal manner. . . . In the absence of a clear and unequivocal assertion of the right to self-representation, a trial court has no independent obligation to inquire into the defendant's interest in representing himself . . . . [Instead] recognition of the right becomes a matter entrusted to the exercise of discretion by the trial court." (Citations omitted.) Conversely, "once there has been an unequivocal request for self-representation, a court must undertake an inquiry [pursuant to Practice Book § 44-3], on the record, to inform the defendant of the risks of self-representation and to permit him to make a knowing and intelligent waiver of his right to counsel." Id., 613 n.9.

"To invoke his [s]ixth [a]mendment right [to self-representation] under *Faretta* [v. *California*, supra, 422 U.S. 806] a defendant does not need to recite some

talismanic formula hoping to open the eyes and ears of the court to his request. Insofar as the desire to proceed pro se is concerned, [a defendant] must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made." *Dorman* v. *Wainwright*, 798 F.2d 1358, 1366 (11th Cir. 1986), cert. denied sub nom. *Dugger* v. *Dorman*, 480 U.S. 951, 107 S. Ct. 1616, 94 L. Ed. 2d 801 (1987). Moreover, "it is generally incumbent upon the courts to elicit that elevated degree of clarity through a detailed inquiry. That is, the triggering statement in a defendant's attempt to waive his right to counsel need not be punctilious; rather, the dialogue between the court and the defendant must *result in* a clear and unequivocal statement." (Emphasis in original.) *United States* v. *Proctor*, 166 F.3d 396, 403 (1st Cir. 1999).

The decision of the United States Court of Appeals for the Second Circuit in *United States ex rel. Maldonado* v. *Denno*, 348 F.2d 12 (2d Cir. 1965), cert. denied sub nom. *DiBlasi* v. *McMann*, 384 U.S. 1007, 86 S. Ct. 1950, 16 L. Ed. 2d 1020 (1966), is instructive. As in the present case, in which the trial court based its ruling largely on defense counsel's "beyond competent and . . . superior" performance at trial, in *Denno*, the Second Circuit concluded that the trial court improperly had restricted a defendant's right to self-representation when it answered the defendant's request that it "give [him] that permission [to act as his own attorney]" by stating, in relevant part, "[n]o, [n]o. . . . You have got a lawyer, a good lawyer, and he is going to try your case." (Internal quotation marks omitted.) Id., 15 n.1. Similarly persuasive is *People* v. *Dent*, 30 Cal. 4th 213, 65 P.3d 1286, 132 Cal. Rptr. 2d 527 (2003), wherein the Supreme Court of California addressed the issue of a request for self-representation that categorically was denied by the trial court. In *Dent*, after the trial court

had appointed new counsel for him, the defendant stated that he wished to proceed with one of his former attorneys or to represent himself. Id., 217. The trial court summarily denied the request for self-representation, stating, " '[n]ot in a death penalty murder trial.' " Id. The defendant never renewed his request for self-representation. Id. The court in *Dent* concluded that the trial court had denied the defendant's request for self-representation and that the record did not otherwise support the denial. Id., 218. Notably, the court rejected the notion that the defendant's failure to renew his request was evidence of equivocation, stating that the trial court's denial of the request "may well have convinced [the] defendant the self-representation option was simply unavailable, and [that] making the request again would be futile." Id., 219.

Applying these principles to the facts of the present case, we conclude that the defendant clearly and unequivocally invoked his right to self-representation. The fact that the trial court recognized and ruled on the defendant's request when it stated "[i]n a word, no" in response to the defendant's request, "[d]on't I have the right to finish this case myself without [defense counsel] there" and, more tellingly, when the court stated that "if you're making a request of me that you be allowed to represent yourself or that you be allowed to retain or have a new counsel appointed for you, *that request is denied*," compels the conclusion that the defendant communicated his request adequately. (Emphasis added.) Moreover, on the next day of trial, the trial court confirmed on the record that it had denied the defendant's earlier request to represent himself,[12] which was tantamount to a sua sponte articulation of

---

[12] The trial court stated to the defendant: "I know you're angry and disappointed the other day at the turn things took about resting and *my not permitting you to represent yourself*." (Emphasis added.)

its previous ruling.[13] The trial court also gave an explicit reason for its denial of the defendant's request, that is, that the requisite "exceptional circumstances" were wanting, not that the request was equivocal.

Thus, regardless of whether the defendant's statements were sufficient standing alone, the fact that the trial court ruled on the request clearly demonstrates its acknowledgment that the request had been made. Rather than eliciting more information from the defendant to clarify his request, however, the trial court peremptorily denied the request and thereby effectively foreclosed any possibility that the defendant would renew his inquiries thereafter.[14] Accordingly, the defendant's failure to renew his request was not evidence of equivocation but, rather, reflects his recognition that the trial court had denied his request. See *United States v. Hernandez*, 203 F.3d 614, 622 (9th Cir. 2000) ("It is true that [the defendant] did not renew his request in later proceedings. This fact does not diminish the clarity of his request, however, or render it equivocal. . . . In circumstances such as these, where it is reasonable for a defendant to believe that a further request would be pointless, we have rejected any suggestion that a defendant must renew his request to represent himself."), overruled in part on other grounds by *United States v. Ferguson*, 560 F.3d 1060 (9th Cir. 2009); *Williams v. Bartlett*, 44 F.3d 95, 101 (2d Cir. 1994) ("[t]he

[13] As Chief Judge Flynn of the Appellate Court noted in his dissenting opinion, "[a]lthough this statement was made two days after the court's ruling, it is entitled to no less deference on appeal, where there has been no showing or claim that the finding was clearly erroneous, than an explanation or articulation that is offered months later." *State* v. *Flanagan*, supra, 102 Conn. App. 138.

[14] Although the trial court did subsequently ask the defendant, "are you making that request to represent yourself in the remainder of this case," it was reasonable—after having been expressly told by the trial court that he did not have a right to represent himself—for the defendant to believe that making the request again would have been futile. See, e.g., *People* v. *Dent*, supra, 30 Cal. 4th 219.

defendant's acquiescence [after the trial court's categorical denial of his request to proceed pro se] cannot be read to signify waiver of a constitutionally protected right . . . [and] even a lawyer could not be faulted for failing to renew a motion under those circumstances" [citation omitted; internal quotation marks omitted]).

The state nevertheless contends that the trial court's statement to the defendant that, "if you're making a request of me that you be allowed to represent yourself or that you be allowed to retain or have a new counsel appointed for you, that request is denied," indicates that the defendant's request was not clear and unequivocal. Specifically, the state claims that, because the trial court mentioned the possibility of alternate rulings—either new counsel or pro se status—the request was equivocal. The possibility of alternate rulings does not, however, preclude a finding of a clear and unequivocal request for self-representation. As the Second Circuit has noted, "[t]o the extent one may view [a request] as conditional . . . a defendant is not deemed to have equivocated in his desire for self-representation merely because he expresses that view in the alternative, simultaneously requests the appointment of new counsel, or uses it as a threat to obtain private counsel." *Williams* v. *Bartlett*, supra, 44 F.3d 100; see also *United States* v. *Hernandez*, supra, 203 F.3d 621–22 ("[t]he fact that [the defendant's] request may have been conditional—that is, the fact that he requested to represent himself only because the court was unwilling to grant his request for new counsel—is not evidence that the request was equivocal"). Accordingly, we conclude that the record demonstrates that the defendant's request for self-representation was clear and unequivocal.

III

As an alternate ground for affirming the judgment of the Appellate Court upholding the defendant's convic-

tion, the state claims that, even if the defendant's request for self-representation was clear and unequivocal, the "exceptional circumstances" test that the trial court used properly balanced the defendant's desire to proceed pro se against the resulting prejudice to the state.[15] In response, the defendant claims that the clause in Practice Book § 44-3 providing that a defendant shall be permitted to represent himself "at any stage of the proceedings" negates any timeliness requirement and, therefore, that his midtrial request to proceed pro se was proper. We conclude that the balancing test employed by the Second Circuit[16] applies to criminal defendants' midtrial requests to proceed pro se.

This court previously has discussed the use of an "exceptional circumstances" test when a defendant seeks to discharge his counsel and have new counsel appointed, particularly on the eve of trial or midtrial. See *State* v. *Webb*, 238 Conn. 389, 423–24, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000). We have noted a distinction "between a substantial and timely request for new counsel pursued

---

[15] The trial court stated to the defendant: "The fact that you disagree with [your attorney] over trial tactics . . . at this stage of the case where the state is about to rest, after we have been on trial essentially for about two and one-half months, does not constitute the kind of *exceptional circumstances* that I would have to find in order for me to allow you either to have a new lawyer or to represent yourself at this point in time." (Emphasis added.)

[16] Under the balancing test employed by the Second Circuit, when "a trial court [is] faced with . . . an application [to proceed pro se after the trial has begun, that court] must balance the legitimate interests of the defendant in self-representation against the potential disruption of the proceedings already in progress. . . . In exercising this discretion, the appropriate criteria for a trial judge to consider are [1] the defendant's reasons for the self-representation request, [2] the quality of counsel representing the [defendant], and [3] the [defendant's] prior proclivity to substitute counsel." (Citation omitted.) *Williams* v. *Bartlett*, supra, 44 F.3d 99–100 n.1.

in good faith, and one made for insufficient cause on the eve or in the middle of trial." *State* v. *Drakeford*, 202 Conn. 75, 82, 519 A.2d 1194 (1987). We also have stated that "[t]here is no unlimited opportunity to obtain alternate counsel. . . . It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel. . . .

"A request for substitution of counsel requires support by a substantial reason, and may not be used to achieve delay. . . .

"In order to work a delay by a last minute discharge of counsel there must exist exceptional circumstances." (Citations omitted; internal quotation marks omitted). Id., 83–84.

Our research, however, does not reveal any case law applying the stringent "exceptional circumstances" test to a defendant's untimely request to proceed pro se. Indeed, although we were not expressly called upon to determine what test should be applied to that issue, our conclusions in *State* v. *Webb*, supra, 238 Conn. 424–26, indicate that a less burdensome standard may apply to an untimely request to proceed pro se, than to an untimely request to substitute counsel. See id. (concluding that no exceptional circumstances existed to justify defendant's untimely request to substitute counsel, but proceeding to analyze whether trial court properly canvassed defendant on his request to proceed pro se, made at same time as request to substitute counsel). Such a conclusion is consistent with the fact that a defendant's right to self-representation raises distinctly different, and more compelling, concerns than does his right to replace competent counsel on the eve of trial. Compare, e.g., *State* v. *Drakeford*, supra, 202 Conn. 83 ("There is no unlimited opportunity to obtain alternate

counsel. . . . It is within the trial court's discretion to determine whether a factual basis exists for appointing new counsel." [Citation omitted; internal quotation marks omitted.]), with *State* v. *Brown*, supra, 256 Conn. 302 (recognizing "the inviolability of the right of self-representation"), and *Williams* v. *Bartlett*, supra, 44 F.3d 99 ("[t]he right of a defendant in a criminal case to act as his own lawyer is *unqualified* if invoked prior to the start of the trial" [emphasis in original; internal quotation marks omitted]). Accordingly, we are not persuaded that the "exceptional circumstances" test applies to a defendant's untimely request to proceed pro se.

We also, however, disagree with the defendant's claim that no timeliness requirement applies at all because the provision, "at any stage of the trial proceedings," in Practice Book § 44-3 negates any such requirement. Rather, we agree with Judge Rogers who stated, in her dissenting opinion, that this provision in § 44-3 does not operate to eliminate considerations of timeliness from the court's assessment of whether a defendant should be permitted to proceed pro se because, to interpret the rule in that way "amounts to holding that a rule of practice enlarges the substantive right of self-representation beyond its bounds as currently established by the text of the relevant constitutional provisions and the cases interpreting them." *State* v. *Flanagan*, supra, 102 Conn. App. 152; see also *State* v. *D'Antonio*, 274 Conn. 658, 710, 877 A.2d 696 (2005) ("the provisions of § [44-3] cannot be construed to require anything more than is constitutionally mandated" [internal quotation marks omitted]); *State* v. *Wolff*, supra, 237 Conn. 653–54 ("[§ 44-3] and the constitutional requirements for permitting a defendant to waive his right to counsel and, thereby, assert his constitutional right to represent himself, are synonymous").

Indeed, the United States Supreme Court recognized in *Faretta* v. *California*, supra, 422 U.S. 806, that there are three grounds for denying a defendant his right to self-representation: "(1) *he makes the request in untimely fashion such that granting it would disrupt the proceedings*; [id., 807]; (2) the defendant engages in serious obstructionist misconduct; id., 834 n.46; and (3) the defendant has not knowingly and intelligently waived his right to counsel. Id., 835; see 2 W. LaFave & J. Israel, Criminal Procedure (1984) § 11.5 (d), pp. 47–49." (Emphasis added; internal quotation marks omitted.) *State* v. *Townsend*, 211 Conn. 215, 221 n.4, 558 A.2d 669 (1989). With respect to the timeliness ground, at issue here, the Second Circuit has stated previously that "[a] criminal defendant must make a timely and unequivocal request to proceed pro se in order to ensure the orderly administration of justice and prevent the disruption of both the pre-trial proceedings and a criminal trial. . . . Assuming, however, that a defendant's request to proceed pro se is informed, voluntary and unequivocal, [t]he right of a defendant in a criminal case to act as his own lawyer is *unqualified* if invoked prior to the start of the trial. . . . Distinct considerations bear upon requests made after a trial has begun." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Williams* v. *Bartlett*, supra, 44 F.3d 99. After the commencement of a trial, the right of self-representation "is sharply curtailed"; (internal quotation marks omitted) *Sapienza* v. *Vincent*, 534 F.2d 1007, 1010 (2d Cir. 1976); and "a trial court faced with such an application must balance the legitimate interests of the defendant in self-representation against the potential disruption of the proceedings already in progress. . . . In exercising this discretion, the appropriate criteria for a trial judge to consider are [1] the defendant's reasons for the self-representation request, [2] the quality of counsel representing the [defendant], and [3] the

[defendant's] prior proclivity to substitute counsel." (Citation omitted.) *Williams* v. *Bartlett,* supra, 99–100 n.1.[17]

We conclude that this balancing test employed by the Second Circuit represents an appropriate inquiry in evaluating the first ground for denying a defendant his right to self-representation suggested by the United States Supreme Court in *Faretta* v. *California,* supra,

---

[17] We note that many other federal and state courts across the country have employed similar tests. See, e.g., *United States* v. *Kosmel,* 272 F.3d 501, 506 (7th Cir. 2001) ("once trial commences, the [D]istrict [C]ourt retains discretion to balance the interests of the defendant against the potential disruption of the proceedings already in progress"); *Buhl* v. *Cooksey,* 233 F.3d 783, 797 n.16 (3d Cir. 2000) (same); *United States* v. *Beers,* 189 F.3d 1297, 1303 (10th Cir. 1999) (same), cert. denied, 529 U.S. 1077, 120 S. Ct. 1696, 146 L. Ed. 2d 501 (2000); *United States* v. *Noah,* 130 F.3d 490, 498 (1st Cir. 1997) (same); *United States* v. *George,* 56 F.3d 1078, 1084 (9th Cir.) (defendant's request to self-representation was properly denied by trial court because it was "intended merely as a tactic to delay" and "could and should have [been] brought" earlier in proceedings [internal quotation marks omitted]), cert. denied, 516 U.S. 937, 116 S. Ct. 351, 133 L. Ed. 2d 247 (1995); *United States* v. *Martin,* 25 F.3d 293, 295–96 (6th Cir. 1994) ("[e]ven where the right to self-representation is clearly invoked, it must be done so in a timely manner, and courts will balance any such assertion against considerations of judicial delay"); *United States* v. *Wesley,* 798 F.2d 1155, 1155–56 (8th Cir. 1986) ("[o]nce trial commences, [the right to self-representation] is subject to the trial court's discretion which requires a balancing of the defendant's legitimate interests in representing himself and the potential disruption and possible delay of proceedings already in progress"); *United States* v. *Dunlap,* 577 F.2d 867, 868 (4th Cir.) (defendant does not have unqualified right to proceed pro se after trial has begun because of "need to minimize disruptions, to avoid inconvenience and delay, to maintain continuity, and to avoid confusing the jury"), cert. denied, 439 U.S. 858, 99 S. Ct. 174, 58 L. Ed. 2d 166 (1978); *People* v. *Ruiz,* 142 Cal. App. 3d 780, 787, 191 Cal. Rptr. 249 (1983) ("[a]mong other factors to be considered by the court in assessing [requests for self-representation] made after the commencement of trial are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion" [internal quotation marks omitted]); *State* v. *Smith,* 215 N.W.2d 225, 227 (Iowa 1974) ("[t]here must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress" [internal quotation marks omitted]).

422 U.S. 807, namely, whether the defendant made his request "in untimely fashion such that granting it would disrupt the proceedings . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Townsend,* supra, 211 Conn. 221 n.4. Accordingly, we conclude that, when a defendant clearly and unequivocally has invoked his right to self-representation after the trial has begun, the trial court must consider: (1) the defendant's reasons for the self-representation request; (2) the quality of the defendant's counsel; and (3) the defendant's prior proclivity to substitute counsel. If, after a thorough consideration of these factors, the trial court determines, in its discretion, that the balance weighs in favor of the defendant's interest in self-representation, the court must then proceed to canvass the defendant in accordance with Practice Book § 44-3 to ensure that the defendant's choice to proceed pro se has been made in a knowing and intelligent fashion. If, on the other hand, the court determines, on the basis of those criteria, that the potential disruption of the proceedings already in progress outweighs the defendant's interest in self-representation, then the court should deny the defendant's request and need not engage in a § 44-3 canvass.

In the present case, our review of the record demonstrates that the trial court did not apply this balancing test when it denied the defendant's request to proceed pro se[18] and instead improperly applied the "exceptional circumstances" test employed for untimely requests to substitute counsel. Accordingly, we remand the case to the trial court to apply the appropriate criteria, as set forth in this opinion, to the defendant's request, to

[18] Indeed, the only factor that the trial court considered when it denied the defendant's request was the fact that the performance of the defendant's attorney was "beyond competent and . . . superior . . . ." Although the quality of counsel is one of the factors to be balanced, it is only one of several factors that must be balanced against the legitimate interests of the defendant in representing himself.

determine if it would have been required to canvass the defendant in accordance with § 44-3. See, e.g., *State v. Connor*, 292 Conn. 483, 533, 973 A.2d 627 (2009) (remanding case to trial court to determine "whether it would have denied the defendant's request to represent himself at trial, due to the defendant's mental illness or mental incapacity, even though the defendant was deemed to have been competent to stand trial and to waive the right to counsel"). In addition, because the improper denial of a request for self-representation is structural error;[19] see, e.g., *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless."); in the event that the trial court determines on remand that, after applying the balancing test adopted herein it would have been required to canvass the defendant pursuant to § 44-3, we direct that court to order a new trial.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings to determine if that court was required to canvass the defendant in accordance with Practice Book § 44-3; in the event that the court determines that it was

---

[19] Structural errors include: total deprivation of the right to counsel at trial; trial by a judge who was not impartial; unlawful exclusion of members of the defendant's race from the grand jury; denial of the right to self-representation at trial; and denial of the right to a public trial. *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). Thus, if a defendant's right to represent himself is violated, the defendant is entitled to a new trial regardless of whether he can demonstrate prejudice. See, e.g., *Flanagan v. United States*, 465 U.S. 259, 268, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984) ("right to represent oneself . . . does not require a showing of prejudice to the defense" [citation omitted]).

required to canvass the defendant pursuant to § 44-3, a new trial is ordered.

In this opinion the other justices concurred.