# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 22, 2014 Session

## STATE OF TENNESSEE v. MICHAEL L. HUFFORD

**Appeal from the Criminal Court for Sullivan County**
**Nos. S59,974; S60,181; S60,182      Robert H. Montgomery, Judge**

---

**No. E2012-02162-CCA-R3-CD - Filed September 8, 2014**

---

In his first trial, appellant, Michael L. Hufford, was convicted of eleven counts of harassment involving two victims. He was convicted in a second trial of driving with a suspended or revoked license, possession of marijuana, and possession of drug paraphernalia. Appellant represented himself during the first trial. However, on the morning of the second trial, he indicated a desire to have the trial continued so he could retain counsel. The trial court assented but conditioned the continuance upon raising appellant's bond. Appellant withdrew his request for a continuance, proceeded to trial, and was found guilty on all counts. The trial court imposed an effective sentence of seven consecutive terms of eleven months, twenty-nine days at seventy-five percent release eligibility with three terms to serve and four to be suspended to probation. Appellant raises the following issues in this direct appeal: (1) whether appellant's waiver of his right to counsel was valid; (2) whether the trial court prohibited appellant from presenting legal issues to the jury; (3) whether the evidence was sufficient to sustain appellant's convictions for harassment; and (4) whether the trial court erred in sentencing him. Following our review, we affirm the judgments and sentences for the eleven counts of harassment for which he is incarcerated. However, because appellant's right to counsel was violated in the second trial, we must reverse appellant's convictions for driving with a suspended or revoked license, possession of marijuana, and possession of drug paraphernalia and remand for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part; Reversed in Part; Remanded**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Ricky A.W. Curtis (on appeal), Blountville, Tennessee, for the appellant, Michael L. Hufford; Michael L. Hufford (at trial), Blountville, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Barry Staubus, District Attorney General; and Leslie A. Foglia, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case involves harassment of two real estate agents in Kingsport, Tennessee, and appellant's driving with a suspended or revoked license, possession of marijuana, and possession of drug paraphernalia.

### I. Facts and Procedural History

#### A. Procedural History

The record reflects that appellant was charged with 122 counts of harassment of Melanie Jennings and eighty-six counts of harassment of Shelby Bass that occurred over a span of several months in 2010. As officers approached appellant's residence to serve the arrest warrant, they witnessed him operating a motor vehicle, and he was later charged with driving on a revoked or suspended license. Also, while arresting appellant on the harassment warrant, officers found marijuana and drug paraphernalia in his possession. Accordingly, appellant was indicted on April 10, 2012, for those three offenses.

On May 24, 2011, appellant was found guilty on all counts of harassment in general sessions court. He appealed the verdicts, and the criminal court remanded the case for "re-trial on the merits." Appellant, represented by an assistant district public defender, waived his right to a preliminary hearing, and the case was bound over to the grand jury. Appellant also requested a jury trial. On January 31, 2012, the grand jury returned indictments charging appellant with six counts of harassment of Ms. Jennings and five counts of harassment of Ms. Bass.

The trial court appointed counsel to represent appellant. However, on February 28, 2012, appellant filed a request to proceed *pro se*, stating that he did not want or need a lawyer. He subsequently executed a "Waiver of Counsel" on March 9, 2012.

#### B. Facts from Harassment Trial

Appellant's trial on the charges of harassment began on May 7, 2012. The State's first witness was Shelby Bass, a realtor in Kingsport, Tennessee. In July 2010, Ms. Bass's business advertisements contained a photograph of her and her cellular telephone number.

She indicated that it was very uncommon for clients or any of her family members to telephone her at midnight or 1:00 a.m.

Ms. Bass recalled that on July 4, 2010, she attended a downtown festival with her family and that she received repeated telephone calls from an unknown number. Each time she answered the telephone, she heard a male voice that she estimated to be "middle age." She said, "Sometimes the voices would just be heavy breathing, noises in the background . . . [S]ometimes this person would say things such as[,] 'Are your nipples hard, I'm masturbating,' nasty stuff." When she hung up the telephone, the male would immediately call back, and she would hear "heavy breathing and noises . . . like someone masturbating." The number that appeared on Ms. Bass's caller ID read "unknown" or "private." She received such telephone calls at "random" times of the day and night, with "no rhyme or reason as to what time." Some calls were placed at 3:00 or 4:00 a.m. She reported the calls to law enforcement. Pursuant to the investigation, Ms. Bass's cellular telephone records from Verizon Wireless were obtained and admitted into evidence at trial.

Ms. Bass stated that the telephone calls at first made her feel "annoyed" and aggravated and then later, frightened. The calls impacted her work because she feared that "some strange person calling [her] on the phone could be wanting to set up an appointment to see a vacant home . . . and then [she] ends up getting killed." Ms. Bass heard appellant speak at trial and identified his voice as being the voice of the caller.

Melanie Jennings, previously a realtor in Kingsport, then testified that in March 2010, she began receiving telephone calls on her cellular telephone "in the middle of the night from blocked numbers." She could hear the caller "masturbating, breathing very, very hard[,] and [she] would hang up." The caller would immediately call back. When Ms. Jennings asked the caller to refrain from calling her further, he would say, "'It will only take a minute.'" She described the voice of the caller as "young." She recalled that he would always ask, "'Are your nipples hard[?]'" Ms. Jennings then described in depth what she heard that made her believe that the caller was masturbating. She eventually reported the calls to law enforcement.

Ms. Jennings stated that when the calls "first started[,] it was just very annoying[,] but then when it kept going and kept going[,] [she] truly became frightened, literally scared to death." She said that when the telephone calls began, she was unable to identify the caller's voice; however, during the course of the proceedings, she heard appellant's voice and recognized that it was the caller's "voice without a doubt." She also recalled that one day in late 2010, appellant walked in to her office and requested a real estate magazine and information about property in Virginia. After appellant was arrested, she saw a photograph of him and realized he had previously come into her office. Through law enforcement's

investigation, she learned that the calls from the blocked telephone numbers had originated from appellant's telephone.

Detective Monica Swayze with the Kingsport Police Department testified that she investigated the complaints of telephone harassment made by Ms. Bass and Ms. Jennings. In the course of her investigation, Detective Swayze obtained telephone records for both victims. She identified two common telephone numbers from each set of records. One of the numbers corresponded to a "land line" located at a Virginia Street address in Kingsport, appellant's residence. She also traced a cellular telephone to appellant, who called Detective Swayze from the cellular telephone in question. Moreover, appellant listed both telephone numbers and his home address on his affidavit of indigency, which was admitted as an exhibit at trial. Detective Swayze stated that when she spoke with appellant's wife, she confirmed that she and appellant were the only two individuals who lived at that address. Neither victim received a harassing telephone call after appellant was arrested.

Appellant rested without presenting any proof. Based upon this evidence, the jury found appellant guilty on all eleven counts of harassment on May 7, 2012. After the jury was dismissed, the trial court arraigned appellant on the charges of possession of marijuana, possession of drug paraphernalia, and driving on a suspended or revoked license. The State advised the trial court that the affiant on those cases, Officer Mark Johnson, was preparing to be deployed and would be unavailable after May 2012. The State requested two days to contact the officer and confirm his deployment date so a trial date could be set. Appellant affirmed that he still planned to represent himself and still wanted a jury trial. The record indicates that the parties were to be in court on May 10, 2012; however, a transcript of that hearing, if it was held as scheduled, is not included in the record. Nonetheless, based on the date of appellant's trial, we glean that the parties agreed on a trial date and proceeded as anticipated.

C. Facts from Trial on Possession of Marijuana, Drug Paraphernalia,
and Driving on a Suspended or Revoked License

Prior to the beginning of the May 21, 2012 trial, appellant, who was again representing himself, requested a thirty-day continuance during which to hire an attorney. The trial court indicated that it would grant appellant's request; however, the court would increase appellant's bond in light of his recent convictions and his being a flight risk. Appellant revoked his request for an attorney, stating, "No, I don't want to do that, Your Honor. . . . Let's go ahead and have the trial. I don't want my bond getting increased. I don't have the money to bond myself out, Your Honor. Let's just go ahead and have the trial. That's fine." The trial court confirmed appellant's wishes by explaining, "I don't [want] to force anybody to go to trial. . . . [Y]ou've asserted all along that you want a speedy trial.

You've asserted all along that you do not want a lawyer. I've tried to give you advisory counsel. . . . Do you want me to see if I can find you advisory counsel for your trial today?" Appellant declined the trial court's offer and reaffirmed his desire to "proceed without one."

After several more minutes of discussion regarding evidentiary matters, appellant again asked, "So if I ask for a lawyer[,] you'll just raise my bond?" The trial court responded, "I have done everything in my power to get you to have a lawyer, okay, but on [the] day of trial when you're all of a sudden with a trial pending asking me for a [lawyer][,] I find that you're doing it just for the purposes of delay." Further, the court continued, "[A]nd when I find somebody is doing something for purposes of delay[,] then I feel that it's something I should do, is to take a look at your bond." The trial court also intimated that appellant would pose a flight risk based on his eleven prior misdemeanor convictions for which he had not yet been sentenced. The trial court explained that it had given appellant two weeks to obtain an attorney and that appellant had refused each time the court had inquired whether he wished to have an attorney. As such, the case proceeded to trial with appellant acting *pro se*.

The State's first witness was Officer Mark Johnson with the Kingsport Police Department. He testified that he was directed to serve an arrest warrant on appellant on November 4, 2010, at appellant's home. As he was arresting appellant, appellant asked if he could give his wife his medication. As Officer Johnson was about to say, "No," appellant's wife reached into his pocket and removed a medicine bottle. Officer Johnson noticed that there was "another baggie" inside of the bottle, so he retrieved the bottle from appellant's wife and looked inside of it. He observed a substance that he thought to be marijuana. He also observed "loose rolling papers" in the bottle. Officer Johnson stated that he then searched appellant and located a "brass-colored pipe" that he believed, based on his experience, was used to smoke marijuana. The bowl of the pipe smelled of marijuana. Through Officer Johnson, the State introduced an abstract of appellant's driver's history that indicated his license had been suspended or revoked at the time of the offenses.

Officer Johnson testified that Officer Gerald Ray arrested appellant and placed him in his police cruiser. However, as Officer Ray was doing so, Officer Ray noticed that there was marijuana in the back seat of his car. Officer Ray secured that marijuana and transported appellant to jail while Officer Johnson remained at the scene to interview the family members. Officer Johnson confirmed that the marijuana found by Officer Ray in the police car was separate from the marijuana that appellant's wife removed from his pants pocket and that appellant was not charged with possession of the marijuana from the police car. Officer Johnson explained that Officer Ray came "straight from the jail" to assist Officer Johnson in serving the warrant; thus, he did not have the opportunity to perform the requisite search of his backseat according to protocol.

The State called Special Agent Forensic Scientist Clayton Hall with the Tennessee Bureau of Investigation's ("TBI") Knoxville Crime Laboratory as its next witness. Agent Hall testified that he was assigned to the drug identification section of the laboratory. He analyzed the substance submitted by Officer Johnson and determined that it was marijuana and that it weighed 2.11 grams. He did not perform any tests on the pipe.

The State then called Officer Gerald Ray with the Kingsport Police Department. He recalled assisting Officer Johnson in serving an arrest warrant at a Virginia Street address on November 4, 2010. He followed Officer Johnson in a separate cruiser. As they approached appellant's residence, Officer Ray observed a vehicle turn into the driveway of the residence. He saw appellant exit the vehicle and walk toward the front door. Officer Ray stated that after they exited their vehicles, Officer Ray ordered appellant to the ground, but he would not comply. Officers forced appellant to the ground and handcuffed him. After appellant was standing upright, a female exited the residence and asked to remove some property from appellant's pants pocket while simultaneously retrieving a pill bottle from his pocket. He confirmed that it was later determined that the pill bottle contained marijuana and that rolling papers and a pipe were also retrieved at the same time.

Subsequently, as Officer Ray was placing appellant in the back seat of his cruiser, appellant directed Officer Ray to a small package of marijuana in the floorboard of the back seat. Officer Ray removed the package and secured it before placing appellant in the back seat. He explained that he was driving a "pool" car, one that is shared by many officers, and that he performed the requisite search of the back seat prior to beginning his shift. However, during the day he assisted in responding to a traffic collision, where he allowed some of the people involved to sit in his patrol car due to weather conditions. Protocol did not dictate searching the patrol car after allowing someone to simply sit in the back seat: it was only required after an officer transported a prisoner.

After the State rested its case-in-chief, appellant called his wife, Nadine Cole, as a witness. She stated that the parking brake in her vehicle "sticks," and to release it, one has to place the vehicle in reverse, back up, then pull forward. She said that on the day in question, she lacked the strength in her arm to release the brake, so appellant had been performing this act for her when the police arrived. She heard the police ordering appellant to "get down," and she saw appellant on the ground, handcuffed, with an officer's knee against appellant's back. Ms. Cole testified that appellant shouted, "'Oh, you're hurting me.'" She said that appellant did not give her anything and that she did not take anything from him during the arrest. Ms. Cole also recalled hearing appellant direct the officer's attention to the marijuana in the patrol car.

Upon this evidence, the jury found appellant guilty as charged on all counts.

-6-

## D. Sentencing Hearing

At the June 26, 2012 sentencing hearing on all convictions, the trial court again inquired of appellant whether he wished to continue representing himself. The trial court informed appellant that it could appoint "advisory" counsel to assist appellant at sentencing and on appeal. The trial court further advised appellant that it would postpone the sentencing hearing for a brief time to allow appellant to confer with an attorney. After asking questions of the trial court, appellant said, "I would want to proceed without a lawyer." Appellant also advised that he would not seek appellate review of his cases.

Accordingly, appellant proceeded *pro se* at his sentencing hearing. He called his wife as a witness, who testified that they had been married for five years. She also described their family structure. Ms. Cole stated that when Detective Swayze visited their home, she never inquired whether anyone else resided in the home and that, in fact, their twenty-two-year-old grandson lived with them at the time. She also said that appellant's children needed him to be released from incarceration because they did not "mind" his ex-wife.

Appellant testified that he had been employed on a temporary basis and generally had worked forty hours per week. He had also filed for social security disability benefits because he had been diagnosed with bipolar disorder, but the request was still pending at the time of the hearing. He requested leniency from the court based on the non-violent nature of his crimes.

The trial court considered the requisite statutory factors and concluded that based on appellant's criminal history, which included convictions for burglary and theft of an automobile, Tennessee Code Annotated section 40-35-114(1) applied as an enhancement factor. It also noted criminal behavior based on appellant's use of marijuana. The trial court applied Tennessee Code Annotated section 40-35-114(7), the offense was committed to gratify appellant's desire for pleasure or excitement, to the harassment convictions. The trial court also applied Tennessee Code Annotated section 40-35-114(13), that appellant had previously failed to comply with the condition of a sentence involving release into the community, based upon appellant's failure to report to the probation office and his smoking marijuana while on bond. In addition, appellant had been on probation in Florida in 1996, and a revocation warrant had been filed, which tolled his probationary period. Finally, the trial court applied Tennessee Code Annotated section 40-35-114(17), finding that appellant intentionally selected the victims based upon their gender.

The trial court considered but gave little weight to the fact that appellant's conduct neither caused nor threatened serious bodily injury. *See* Tenn. Code Ann. § 40-35-113(1). It did not find any other mitigating factors.

The trial court imposed sentences of eleven months, twenty-nine days for all Class A misdemeanor convictions at seventy-five percent release eligibility and six months for the Class B misdemeanor of driving with a suspended or revoked license at seventy-five percent. Based on appellant's extensive record of criminal activity and his being on probation when the offenses were committed, the trial court concluded that partial consecutive sentencing was appropriate. Tenn. Code Ann. § 40-35-115(2), (6). The trial court aligned appellant's sentences for driving with a suspended or revoked license, possession of marijuana, and possession of drug paraphernalia concurrently with each other. Three of the harassment convictions involving Ms. Jennings were aligned consecutively to each other, and three were aligned concurrently with each other and with the driving and drug convictions. The trial court ordered three of the sentences involving Ms. Bass to be served consecutively to each other, and the remaining two were aligned concurrently with each other and with the sentences for the other harassment convictions. It then ordered the sentences involving Ms. Bass to be served consecutively to those involving Ms. Jennings and to the driving and drug-related sentences, for an effective sentence of seven consecutive terms of eleven months, twenty-nine days.

In ruling on appellant's request for alternative sentencing, the trial court concluded that appellant had a long history of criminal conduct and that measures less restrictive than confinement had been applied to him unsuccessfully. Tenn. Code Ann. § 40-35-103(1), (3). The trial court ordered appellant to serve three of his sentences for harassment at seventy-five percent release eligibility, and it suspended the remainder of the sentences to probation.

## II. Analysis

Appellant raises four issues for our review: (1) whether appellant's waiver of his right to counsel was valid; (2) whether the trial court prohibited appellant from presenting legal issues to the jury; (3) whether the evidence was sufficient to sustain appellant's convictions for harassment; and (4) whether the trial court erred in sentencing him.

### A. Right to Counsel

Appellant claims that the trial court failed to protect his right to counsel during the proceedings. In its initial brief, the State maintained that appellant has waived this issue because he did not prepare a complete record that included the hearing regarding his desire to represent himself.

"The determination of whether a defendant has exercised his or her right of self-representation and has concurrently waived his or her right to counsel is a mixed question of law and fact." *State v. Hester*, 324 S.W.3d 1, 29 (Tenn. 2010) (citing *United*

*States v. Kimball*, 291 F.3d 726, 730 (11th Cir. 2002); *United States v. Robinson*, 913 F.2d 712, 714 (9th Cir. 1990); *Spencer v. Ault*, 941 F. Supp. 832, 851 (N. D. Iowa 1996); *State v. Jordan*, 118 Conn. App. 628, 984 A.2d 1160, 1166 (2009); 1 Kevin F. O'Malley *et al.*, Federal Jury Practice & Instructions § 5:6 (6th ed. 2009)). Accordingly, on appeal, we apply a de novo standard of review, granting the trial court the presumption that its findings of fact are correct. *Id.* at 29-30 (citing *State v. Holmes*, 302 S.W.3d 831, 837 (Tenn. 2010)). An error in denying the right to counsel is a structural constitutional error that is not subject to harmless error review and requires automatic reversal. *Id.* at 30 (citing *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008)).

Our inquiry in this case is two-fold. Appellant had the benefit of appointed counsel prior to his first trial. He filed a motion to dismiss his attorney and proceed *pro se*. He executed an appropriate "Waiver of Counsel" form, which was included in the record. However, appellant did not include a transcript of the hearing that contained a colloquy with the trial court. It is appellant's responsibility to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues forming the basis of the appeal. Tenn. R. App. P. 24(b). We will not presume error from a silent record. We must conclude that appellant's first waiver of counsel was not in error.

However, the jury returned verdicts of guilty on the harassment charges on May 7, 2010. The court convened a hearing on May 10, which is not included in the record. Presumably, an almost immediate trial date was set for May 21 for disposition of the driving and drug charges. On the morning of the May 21 trial, appellant expressed his desire to request a continuance and seek counsel. The trial court agreed to grant the continuance, conditioned upon raising appellant's bond. The court cited "delay" and "flight risk" as reasons for doing so.

In this case, we note that appellant had not previously requested a continuance of any of his court dates. He had always appeared as scheduled. Moreover, the risk of appellant fleeing, if any, existed when he exited the courtroom on May 7, 2010. It also existed, if at all, when the parties presumably scheduled the May 21 trial date in court on May 10. We cannot conclude that appellant's risk of flight would have increased so drastically on May 21 or during the thirty-day continuance he requested as to warrant raising his bond to a potentially unattainable amount. Conditioning appellant's request for a continuance to hire an attorney, thus implicating his right to counsel, upon accepting bond terms that would render him incarcerated was a violation of his constitutional rights. This violation was further exacerbated by the fact that the primary officer on the case was scheduled to be deployed. In light of the officer's impending unavailability, appellant would have had the following choices: (1) remain in incarceration until the officer returned; or (2) agree to waive issues such as chain of custody and proceed to trial. For these reasons, we must reverse

appellant's convictions for driving with a suspended or revoked license, possession of marijuana, and possession of drug paraphernalia and remand those cases for re-trial.[1]

## B. Right to Present Double Jeopardy Argument to Jury

Appellant argues that the trial court erred by denying his request to argue that the harassment proceedings in the criminal court violated the prohibition against double jeopardy. He sought to argue that because he had been tried previously in general sessions court, his appeal to the criminal court implicated double jeopardy protections. The trial court properly denied appellant's request.

A trial court is required to instruct the jury regarding the law applicable to the facts of the case. *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986). However, an appellant is not entitled to have a jury determine matters involving questions of law alone. *See State v. Moore*, 332 S.W.2d 176, 177 (Tenn. 1960) (citation omitted). By analogy, to further effectuate this principal, our judicial system provides for a separate category of appeals for questions of law when the factual basis for a guilty plea is not disputed. *See* Tenn. R. Crim. P. 37(b)(2)(iv); *State v. Smotherman*, 201 S.W.3d 657, 659 (Tenn. 2006) (appealing certified question of law involving validity of search); *State v. Caldwell*, 924 S.W.2d 117, 119 (Tenn. Crim. App. 1995) (appealing certified question involving constitutionality of a statute); *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988) (appealing certified question involving admissibility of a statement to law enforcement). This procedure for determining purely legal issues in the absence of a factual dispute lends further credence to the *Moore* holding that a defendant is not entitled to have a jury determine questions of law alone. Appellant was not entitled to have the jury consider his double jeopardy argument.

---

[1] We are not unsympathetic to the plight of the trial court in this case. It was faced with a difficult *pro se* defendant and the impending deployment of the State's primary witness. The State and the trial court have an interest in prompt disposition of criminal matters, and a continuance in appellant's case would have possibly resulted in a prolonged continuance. We perceive that appellant likely was aware of that possibility and sought the continuance because of it. However, because the right to counsel is sacrosanct, we are constrained to reverse and remand appellant's convictions for the driving and drug offenses. *State v. Carruthers*, 35 S.W.3d 516, 546 (Tenn. 2000) (noting that both the constitutions of the United States and Tennessee guarantee an indigent criminal defendant the right to appointed counsel at trial); *see* U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *Gideon v. Wainwright*, 372 U.S. 335 (1963); *State v. Small*, 988 S.W.2d 671, 673 (Tenn. 1999); *State v. Northington*, 667 S.W.2d 57, 60 (Tenn. 1984). The trial court could have first sentenced appellant for the misdemeanor harassment convictions, and upon doing so, appellant could have appealed his convictions. At that procedural juncture, the trial court could have considered increasing appellant's bond during the pendency of his appeal pursuant to Tennessee Code Annotated section 40-11-113.

## C. Sufficiency of the Evidence

Appellant contends that there was insufficient evidence presented to sustain his convictions for harassment. He does not challenge the evidence underlying his remaining convictions.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

As charged in this case, the State must have established beyond a reasonable doubt that appellant intentionally "[p]lace[d] one (1) or more telephone calls anonymously, or at an hour or hours known to be inconvenient to the victim, or in an offensively repetitious manner, or without a legitimate purpose of communication, and by this action knowingly

annoy[ed] or alarm[ed] the recipient." Tenn. Code Ann. § 39-17-308(a)(2). The State's evidence included cellular telephone records that connected appellant to the offenses and established the number of calls made. It also presented testimony from the victims identifying appellant's voice as that of the caller and describing the effect the telephone calls had on them personally. This evidence was sufficient to establish appellant's guilt beyond a reasonable doubt.

Appellant asserts that the "tenuous" nature of the circumstantial evidence and the victims' lack of familiarity with his voice, "particularly in the absence of other, significant corroborating evidence," rendered the evidence of his guilt insufficient. We disagree. Rather, we conclude that the strength of the circumstantial evidence and the credibility of the victims were questions for the jury, which we will not disturb. *Dorantes*, 331 S.W.3d at 379. Appellant is not entitled to relief on this issue.

## D. Sentencing

Appellant contests the lengths and alignment of his sentences as well as the trial court's denial of full probation.

### 1. Length of Sentences

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides that the trial court shall impose a specific sentence consistent with the purposes and principles of the sentencing statutes. *See State v. Palmer*, 902 S.W.2d 391, 394 (Tenn. 1995). While a separate sentencing hearing is not mandatory for misdemeanor sentencing, the trial court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a). The trial court must sentence the misdemeanor offender to a determinate number of hours, days, or months, and fix a percentage of that sentence for the offender to serve, after which the offender becomes eligible for rehabilitative programs. Tenn. Code Ann. § 40-35-302(d). In determining the percentage of the sentence, the trial court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing. *Id*. The misdemeanor sentencing statute grants the trial court the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any

other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). While the Tennessee Supreme Court has not addressed whether the *Bise/Caudle* standard of review applies to misdemeanor sentencing, this court has applied the abuse of discretion with a presumption of reasonableness standard of review in misdemeanor sentencing cases. *See, e.g., State v. Michael Glen Walsh*, No. E2012-00805-CCA-R3-CD, 2013 WL 1636661, at *4 (Tenn. Crim. App. Apr. 17, 2013), *no perm. app. filed*; *State v. Sue Ann Christopher*, No. E2012-01090-CCA-R3-CD, 2013 WL 1088341, at *7 (Tenn. Crim. App. Mar. 14, 2013), *perm. app. denied* (Tenn. June 18, 2013). Therefore, we will apply that standard of review in this case. We note that the supreme court has previously held that the sentencing court is entitled to considerable latitude in misdemeanor sentencing. *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1998) (citing *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998)).

## 2. Sentence Alignment

Prior to 2013, on appellate review of sentence alignment issues, courts employed the abuse of discretion standard of review. *See State v. Hastings*, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999). Our supreme court has since extended the standard of review enunciated in *State v. Bise*, abuse of discretion with a presumption of reasonableness, to consecutive sentencing determinations. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013); *Bise*, 380 S.W.3d 682, 707 (Tenn. 2012) (modifying standard of review of within-range sentences to abuse of discretion with a presumption of reasonableness); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying abuse of discretion with a presumption of reasonableness to review of alternative sentencing determinations by the trial court). Thus, the presumption of reasonableness gives "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b) . . . ." *Pollard*, 432 S.W.3d at 861.

The procedure used by the trial courts in deciding sentence alignment is governed by Tennessee Code Annotated section 40-35-115, which lists the factors that are relevant to a trial court's sentencing decision. Imposition of consecutive sentences must be "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1).

-13-

The length of the resulting consecutive sentence must be "no greater than that deserved for the offense committed." *Id.* § 40-35-103(2). The court may order consecutive sentences if it finds by a preponderance of the evidence that one or more of the following seven statutory criteria exists:

(1)     The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2)     The defendant is an offender whose record of criminal activity is extensive;

(3)     The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)     The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5)     The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)     The defendant is sentenced for an offense committed while on probation; or

(7)     The defendant is sentenced for criminal contempt.

The *Pollard* court reiterated that "[a]ny one of these grounds is a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.*

Of the seven statutory factors, the trial court in this case found that appellant had an extensive criminal history and that he committed the offenses while on probation.  Tenn. Code Ann. § 40-35-115(2), (6).  The record supports the trial court's findings in this regard. The trial court did not abuse its discretion in ordering partial consecutive sentence alignment.

### 3.  Denial of Full Probation

A trial court should base its decision regarding alternative sentencing on the following considerations:

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1).

Although it was not mandatory, the trial court held a separate sentencing hearing to address all of appellant's convictions.  At the hearing, appellant was afforded the opportunity to be heard.  The trial court considered enhancing and mitigating factors and fixed the number of months and days of the sentence and the percentage of the sentence to be served. The trial court also suspended a part of appellant's sentence to probation.  Based upon appellant's criminal history, his inability to comply with the terms and conditions of a probationary sentence, and the nature of the crimes in these cases, we cannot conclude that the trial court abused its discretion in imposing an effective sentence of seven terms of eleven months, twenty-nine days with three terms to serve.  However, because we have reversed his convictions for driving with a suspended or revoked license, possession of marijuana, and possession of drug paraphernalia, we must also vacate the three concurrent sentences imposed by the trial court.  This does not affect the three sentences appellant was ordered to serve; it merely shortens the length of his suspended sentence from four to three consecutive terms of eleven months, twenty-nine days.

## CONCLUSION

Based on the record as a whole, the briefs of the parties, the applicable legal authority, and arguments of counsel, we affirm the judgments of conviction and sentences for the eleven counts of harassment. However, because appellant's right to counsel was violated, we reverse appellant's convictions for driving with a suspended or revoked license, possession of marijuana, and possession of drug paraphernalia and remand for proceedings consistent with this opinion.

_____
ROGER A. PAGE, JUDGE